IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES EQUAL EMPLOYMENT )
OPPORTUNITY COMMISSION, )
                   )
           Plaintiff, )
                   )
and )
                   )
REBECCA BROCKMAN (ANACLETO), )
                   )
           Plaintiff-Intervenor, )
                   )
       v. )
                   )
DAEWOO MOTOR AMERICA, INC., )
d/b/a DAEWOO OF SEMINOLE, )
                   )
           Defendant. )
_____)

CIVIL ACTION NO.
6:01-CV-879-Orl-28 KRS

## PLAINTIFF EEOC'S MOTION TO COMPEL DISCOVERY

Plaintiff, the U.S.Equal Employment Opportunity Commission, ("EEOC " or "the Commission"), pursuant to Fed. R.Civ. P. 37 and the United States District Court for the Middle District of Florida Local Rule 3.04, hereby moves for an Order compelling the Defendant Daewoo Motor America, Inc., ("Defendant" or "Daewoo") to produce the discovery addressed herein.

From the onset of this litigation, EEOC has unsuccessfully attempted to secure required discovery information from the Defendant including: 1) a copy of Defendant's employment practices liability insurance policy effective during the relevant period of this lawsuit; 2) a privilege log identifying all documents withheld pursuant to any privilege; and 3) financial worth information. The EEOC is clearly entitled to such discovery. The insurance policy and the privilege log are not only permissible discovery, but are required disclosures pursuant to the Federal Rules of Civil

Procedure.  In addition, EEOC has properly pled for punitive damages in this case and, as such, is entitled to obtain information demonstrating Defendant's financial worth.  This information is now even more critical, given Defendant's recent representations regarding its financial condition.

Notably, Defendant has raised no legal objection to the production of the insurance policy and the privilege log.  Instead, Defendant repeatedly represents that it will produce the information, then fails to do so.  Defendant did initially object to producing its financial worth information.  However, as explained at length herein, the objections raised are unsustainable.  Moreover, like the insurance policy and privilege log, Defendant ultimately agreed, in writing, to produce the financial worth information requested, but subsequently failed to ever do so.

Pursuant to M. D. Fla. L. R. 3.01(g), EEOC has repeatedly attempted to resolve these discovery issues with the Defendant informally.  However, all efforts have been met with false promises, delay tactics and/or complete disregard.  As Defendant has elected to take an uncooperative stance with respect to this discovery, EEOC is now compelled to file the present motion and request that this Court issue an Order compelling its disclosure.

## INITIAL DISCLOSURES, REQUEST FOR PRODUCTION AND INTERROGATORY

Pursuant to M. D. Fla. L. R. 3.04, EEOC hereby states the discovery request, Defendant's response and EEOC's objection to that response for the discovery at issue here including:  A) Defendant's insurance policy; B) a privilege log; and C) Defendant's financial worth information.

**A.**    **Insurance Policy**

### Fed. R. Civ. P. 26(a)(1)(D) Initial Disclosure Requirement

[a] party must, without awaiting a discovery request, provide to other parties . . . for inspection and copying as under Rule 34 any insurance agreement under which any person carrying

2

on an insurance business may be liable to satisfy part or all of a judgement which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgement. <u>Fed. R. Civ. P.</u> 26(a)(1)(D).

### Defendant's Amended Initial Disclosures

Daewoo maintains and has maintained at the time of the events in question a directors, officers and private company liability insurance policy including employment practices and securities liability policy with the National Union Fire Insurance Company of Pittsburgh, PA. The policy number is 860-08-37. (Exhibit 1).

### Defendant's Representation Regarding Insurance Policy dated February 5, 2003

With respect to Daewoo's Initial Disclosures, without waiving its original objections, Daewoo will produce any non-privileged responsive documents at the offices of Daewoo's counsel at a mutually agreed upon date and time. (Exhibit 2).

### EEOC's Objection to Defendant's Initial Disclosures

To date no insurance policy has been produced.

The insurance policy is a required disclosure pursuant to the Federal Rules of Civil Procedure. Defendant admitted that it had an "insurance agreement under which any person carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action." To date Defendant has provided the EEOC with nothing more than the name of the insurance company and policy number. However, Defendant has failed to provide for inspection and copying the actual policy as required pursuant to <u>Fed. R.Civ. P.</u> 26(a)(1)(D). Defendant has raised no legal objection to the production of the insurance policy. In fact, Defendant ultimately agreed in writing to provide the insurance policy, but has failed to ever do so. Defendant's failure to provide the insurance policy not only contravenes the letter of the Federal Rules, but has also

resulted in prejudice to both EEOC and the Plaintiff-Intervenor by denying them information necessary to pursue what may be a necessary source of relief in this action.

**B.**     **Privilege Log**

**Request for Production No. 5**

Please provide copies of any and all of Defendants' internal communications relating to any fact or matter alleged in EEOC's Complaint including, but not limited to, internal memoranda, correspondence, messages and notes. (Exhibit 3).

**Defendant's Response to Request for Production No. 5**

Daewoo objects to Request for Production number 5 because, *inter alia*, it calls for production of information that is confidential and/or protected from disclosure by the attorne-client privilege and/or attorney work product doctrine. Without waiving its objections, Daewoo will produce non-privileged documents it believes are responsive to Request for Production number 5, to the extent any exists, at the offices of Daewoo counsel at a mutually agreed upon date and time. (Exhibit 3).

**Defendant's Representation Regarding Request for Production No. 5 dated February 5, 2003**

With Respect to Request for Production # 5, Daewoo produced all non-privileged documents it believes are responsive to Request for Production # 5, to th extent any existed. A privilege log will be provided for any responsive documents withheld on the basis of any privilege. (Exhibit 2).

**EEOC's Objection to Defendant's Responses**

To date no privilege log has been produced.

Pursuant to Fed. R.Civ. P. 26(b)(5), a party *shall* provide to all other parties to an action a

description of all information withheld pursuant to privilege in a manner that will enable the other parties to assess the applicability of the privilege. As with the insurance policy, the Defendant has raised no legal objection to the production of the privilege log. In fact, Defendant agreed in writing to produce the privilege log, but has failed to do so.

This failure to produce a privilege not only violates the Federal Rules, but has also resulted in prejudice to the EEOC and Plaintiff-Intervenor and has caused an undue delay in these proceedings. Specifically, the evidence of record in this case indicates that two separate internal investigations regarding the claims at issue here were conducted by the Defendant and documents were generated pursuant to those investigations. EEOC anticipates that Defendant may rely upon these investigations as part of its defense in this action and/or that information obtained in these investigations may support its claims in this action. As such, EEOC propounded Request for Production #5 and Interrogatory #3 to obtain information obtained in the investigations. Defendant objected to both requests on the grounds that the information sought was not subject to disclosure pursuant to privilege. However, Defendant never identified the withheld documents or provided a description of them. This failure has precluded the Plaintiffs from being able to assess the applicability of the privileges raised and delayed their efforts to challenge such privileges before this Court. As such, EEOC is now left facing an impending discovery cutoff, with no idea as to what documents are being withheld and very little time to seek court assistance in securing them.

### Interrogatory 1-3

Identify any and all documents and recorded materials (including, not but limited to, transcripts, tapes, videos, personnel records and files, notes, memoranda, letters to or from supervisors, supervisors' notes, documents regarding separation and/or termination from employment, disciplinary files and/or any other employment information contained in a file of any

5

type, etc.) pertaining or relating in any way to any interviews and/or investigation into any sexual

harassment or constructive discharge allegations by Rebecca Brockman, against Defendant. (Exhibit

4).

**Defendant's Answer to Interrogatory 1-3**

Daewoo objects to Interrogatory no. 1-3 because, *inter alia*, it calls for production of

information that is confidential and/or protected from disclosure by the attorne-client privilege

and/or attorney work product doctrine.  Without waiving its objections, Daewoo will produce non-

privileged documents it believes are responsive to Interrogatory no. 1-3, to the extent any exists, at

the offices of Daewoo counsel at a mutually agreed upon date and time.  (Exhibit 4).

**Defendant's Representations Regarding Interrogatory 1-3dated February 5, 2003**

With respect to Interrogatory 1-3, Daewoo produced all non-privileged documents it believes

are responsive to Interrogatory 1-3, to the extent any existed.  A privilege log will be provided for

any responsive documents withheld on the basis of any privilege.  (Exhibit 2).

**EEOC's Objection to Defendant's Answer to Interrogatory 1-3**

See EEOC's Objection with respect to Request for Production #5.


C.     **Financial Worth Information**

**Request for Production No. 3**

Please provide the Defendant Corporation's annual reports and audited financial statements

reflecting Defendant's revenues, assets, and net worth from 1998 to present.  (Exhibit 3).

**Defendant's Response to Request for Production No. 3**

Daewoo objects to Request for production number 3 on the basis that it, *inter alia*, is

irrelevant to the issues in the case, overbroad, burdensome, and not reasonably calculated to lead to

the discovery of admissible evidence.  (Exhibit 3).

### Defendant's Representations Regarding Request for Production No. 3 dated February 5, 2003

With respect to Request for Production #3, without waiving any of its original objections, Daewoo will produce any non-privileged responsive documents at the offices of Daewoo's counsel at a mutually agreed upon date and time.  (Exhibit 2).

### EEOC's Objection to Defendant's Responses

To date no responsive documents have been produced.

The documents requested are clearly within the permissible scope of discovery and will provide the EEOC with relevant information.  EEOC's request for financial documents directly relates to the claim of punitive damages in that it allows the EEOC to construct an accurate and clear understanding of Defendant's financial condition and will permit a jury to properly assess an appropriate amount of punitive damages, if any, to award in this action.

For the reasons stated herein and in the accompanying memorandum of law in support of this Motion to Compel, Plaintiff requests that this Court issue an order compelling Defendant to respond to Plaintiff's discovery requests.

## MEMORANDUM OF LAW

### I.    Factual Background

The Commission  filed this action on July 26, 2001 under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex (female) and to provide appropriate relief to Rebecca Brockman, and other similarly situated individuals who were adversely affected by such practices.  Specifically, the Commission

7

alleged that Ms. Brockman, and similarly situated females were subjected to unwelcome verbal and physical conduct of a sexual nature by the Defendant because of their sex. The conduct was sufficiently severe and pervasive to constitute a hostile intimidating work environment. As a result of the harassment, and Defendant's failure to take effective, remedial action, Rebecca Brockman was compelled to resign from her position. On December 6, 2001, the Court granted Intervenor Brockman's Motion to Intervene in this action. The Intervener's complaint alleged Title VII claims as well as claims brought under § 760 of the Florida Statutes.

Pursuant to this Court's Scheduling Order EEOC provided Defendant with Initial Disclosures on December 6, 2001. Defendant filed a Notice of Unavailability for the period of December 5, 2001 through January 11, 2002 and asked for an extension of time to provide Initial Disclosures. Defendant provided its Initial Disclosures to Plaintiff on January 3, 2002 and its Amended Initial Disclosures on January 7, 2002. (Exhibit 1).

EEOC first addressed the disputes at bar in a letter dated April 29, 2002, to which Defense Counsel never responded. (Exhibit 5). On April 30, 2002, Defendant filed a second Notice of Unavailability which encompassed a two-week period commencing May 6, 2002. At this point during the discovery phase of this case, circumstances arose which created confusion among the parties and significantly hindered the ability of all parties to complete necessary discovery. On May 16, 2002, Defendant Corporation filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code, 11 U.S.C. § 101. On June 6, 2002, Defendant filed a "Suggestion of Bankruptcy" taking the position that this action was automatically stayed due to the Chapter 11 filing.

On June 28, 2002, the undersigned attorney requested, in writing, that Defense Counsel amend its Suggestion of Bankruptcy, to acknowledge EEOC's authority to proceed with this action pursuant to 11 U.S.C. §3629b)(4), which provides an exception to EEOC from the automatic stay. EEOC was

8

unable to informally resolve this matter with Defense Counsel and was force to file a motion for Clarification of Case Status and For Extension of Litigation Deadlines on August 2, 2002.   Defense Counsel asked this Court for an extension of time to respond to Motion, which the Court granted. However Defense Counsel never provided a response.   On September 20, 2002, this Court GRANTED both EEOC's Motion for Clarification of Case Status and Extension of Litigation Deadlines.  The Court found that "notwithstanding Defendant's petition for relief under Chapter 11 of the U.S. Bankruptcy Code, this case is not stayed pursuant to 11 U.S.C. §362(b)(4)," and that "the filing of a petition in Bankruptcy Court does not automatically stay an action by a governmental unit to enforce the government's regulatory powers."  Furthermore, the Court amended several discovery dates and extended the discovery deadline until November 20, 2002.

Immediately upon notice from the Court that this action was not stayed pursuant to 11 U.S.C. §362(b)(4), EEOC noticed two depositions and corresponded with Defense Counsel on October 3, 2002 concerning these same outstanding discovery issues. (Exhibit 6).  EEOC did not receive any communication from the Defendant concerning that letter.  Instead, on October 16, 2002, Defense Counsel filed a Notice of Potential Conflict, anticipating her unavailability to participate in any proceeding in this cause of action from October 24, 2002 through approximately December 4, 2002. This unavailability essentially made it  impossible to conduct any discovery in this lawsuit and virtually rendered this Court's amendment to the Case Management Schedule extending discovery until November 20, 2002, meaningless.

EEOC then filed an Agreed Upon Motion for a Rule 16 Case Status Conference and Extension of Litigation Deadlines on November 13, 2002.   This Court denied the motion and ordered counsel for the parties to confer in good faith to prepare a proposed revised case management schedule.   On January 7, 2003, EEOC filed an Agreed Upon Motion to Amend the

Current Case Management Schedule, which this Court Granted and issued a 2nd Amended Case Management Schedule on January 23, 2003, with the current discovery deadline of May 16, 2003.

EEOC immediately again attempted to resolve in good faith the discovery disputes that have been on-going since April 29, 2002. On January 31, 2003, EEOC, via correspondence, addressed for the third time with Defendant its concern regarding several documents in its possession which were responsive to EEOC's document request, which had not been disclosed. (Exhibit 7). On February 5, 2003, after months of delays, Defense Counsel agreed to produce any non-privileged responsive financial documents with respect to EEOC's Request for Production #3, at the offices of Daewoo's counsel at a mutually agreed upon date and time. Defense Counsel also made this representation in its response to EEOC's Request for Production #1, seeking relevant personnel files. Additionally, Defendant indicated that it would provide privilege logs in Response to EEOC's Request for Production #5 and its answer to EEOC Interrogatory #3. Furthermore, Defense Counsel represented that it would produce any non-privileged documents responsive to EEOC's request for the insurance policy. (Exhibit 2). After the undersigned made several attempts to secure these documents as soon as possible, defense Counsel finally agreed to produce them for pick up on February 14, 2003.

Upon reviewing the documents produced, EEOC realized that Defense Counsel had turned over documents responsive to Request for Production #1, i.e., personnel files. *No other documentation was provided; nor did Defendant provide and explanation as to why it was not provided.* On February 25, 2003, EEOC corresponded with Defense Counsel in regards to the documentation that was not provided, however no response was received by defendant. (Exhibit 8). Furthermore, on March 10, 2003, the undersigned contacted Defense Counsel's firm in reference to a mediation scheduled for May 2003. At that time the undersigned left a message with Defense

10

Counsel's representative regarding the documents that were not turned over. Subsequently, on March 11, 2003, EEOC received a facsimile from Defense Counsel stating "I am still attempting to get the responsive documents from California. I will update you on the status by the end of the week." (Exhibit 9). As of the end of that week, Friday, March 14, 2003, the undersigned received no contact from Defense Counsel.

As this factual background illustrates, Defendant has elected to ignore its responsibilities in this litigation. This conduct flies in the face of both the letter and spirit of the Federal Rules of Civil Procedure and has resulted in undue delay in this proceeding and prejudice to the Plaintiffs. As Defendant has consistently failed to cooperate with respect to the discovery at issue here, EEOC is now compelled to file this motion requesting that this Court issue an Order compelling Defendant to produce the discovery addressed herein.

## II.    **DEFENDANT IS REQUIRED TO PRODUCE ITS INSURANCE POLICY**

Fed. R.Civ. P. 26(a)(1)(D) states, in pertinent part:

> [a] party must, without awaiting a discovery request, provide to other parties . . . for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgement which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgement.

Pursuant to this Rule, as well as the Case Management Report, Defendant provided Initial Disclosures to EEOC on January 3, 2002, and an Amended Initial Disclosures on January 7, 2002. In Daewoo's disclosure it admits to maintaining, at the time of the events in question, a directors, officers and private company liability insurance policy including employment practices and securities liability policy with the National Union Fire Insurance Company of Pittsburgh, PA.(Policy # 860-08-37). Clearly, any insurance policy for "employment practices" liability effective during

11

the relevant period of this suit falls well within the description of <u>Fed. R. Civ. P.</u> 26(a)(1)(D) and, thus, must be made available to the EEOC for inspection and copying.

Defendant has raised no legal objection to production of its insurance policy, but rather simply fails to provide it. This consistent failure to produce has prejudiced both the EEOC and Plaintiff-Intervenor. The insurer at issue may very well be the most appropriate and viable source of relief in this action, especially given Defendant's Chapter 11 status. However, neither Plaintiff has been able to effectively pursue this source of relief as Defendant has unreasonably failed to produce the policy.

Defendant should not be permitted to preclude the Plaintiffs from access to the appropriate source of relief in this case, and therefore benefit their insurance carrier, by simply ignoring the requirements of the Federal Rules. As such, EEOC is hereby requesting that this Court issue an Order compelling Defendant to produce its insurance policy within five (5) business days of such Order.

## III.   **PRODUCTION OF PRIVILEGE LOG**

As with the insurance policy, there can be no dispute that the EEOC is entitled to a privilege log from Defendant. <u>Fed. R.Civ. P.</u>, Rule 26(b)(5) states,

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Federal Courts have consistently endorsed the Rule's requirement that a party withholding information pursuant to privilege *must* provide a privilege log.

To satisfy the burden established by Rule 26(b)(5), the party asserting the privilege

must provide a privilege log that describes in detail the documents or information claimed to be privileged and the precise reasons the materials are subject to the privilege asserted. (citation omitted).

Horton v. United States, 204 F.R.D. 670, 673 (D.Col. 2002); See, also, Simmons Foods, Inc. v. Willis, 196 F.R.D. 610, 611 (D. Kan. 2000) ("Contrary to federal rule, Plaintiff failed to provide Defendants with a privilege log with respect to the documents withheld"); and Etienne v. Wolverine Tube, Inc., 185 F.R.D. 653, 656 (D. Kan. 1999).

In PS Promotions, Inc. v. Stern, Case No. 97 C 3742, 2001 WL 293033 (N.D.Ill.), the Defendants requested Plaintiff provide any statements from potential witnesses. Plaintiff identified no statements, but merely stated a blanket objection based on attorney-client privilege and work product. (Exhibit 10, Opinion). The Court addressed Plaintiff's failure to provide a privilege log stating:

> Not until Defendants had filed a motion to compel did Plaintiff's attorneys respond to that letter with the puzzling assertion that it had no obligation to identify the Sullivan memo because "you never requested a privilege log." (Letter of 11/9/98, Ex. 20 to Defendants' Appendix.) Again Plaintiff's declaration reflects a gross misunderstanding of the discovery rules. The party who withholds information or documents is required by those rules to produce a privilege log. Fed. R. Civ. P. 26(b)(5). (citations omitted).

Id. at *7.

In addressing a party's failure to timely provide a privilege log during the discovery phase of litigation, federal courts have found that such failure may result in sanctions including a Court finding the objections to be abandoned, waived or awarding attorney's fees. See Carver v. Velodyne Acoustics, Inc., 202 F.R.D. 273, 274 (W.D. Wash. 2001) (". . . the interrogatories should have been responded to in a complete manner and a privilege log should have been produced. Accordingly, Velodyne is instructed to submit a declaration regarding the fees and costs associated with this motion [to compel]); and Cotracom Commodity Trading Co. v. Seabord Corp., 189 F.R.D. 655, 661 (D. Kan. 1999) (Court deemed Defendants' objections abandoned, held it could also have deemed them waived for failure to comply with Rule 26(b)(5)).

13

In this case, EEOC properly requested information regarding any internal investigation or communications regarding the claims at bar.  Defendant responded with a blanket invocation of attorney-client privilege and work product and  a subsequent promise to provide a privilege log.  To date no such log has been produced.  This failure is in direct contravention of the Federal Rules  and prejudices the Plaintiffs in this case.  As such EEOC is requesting that this Court compel the Defendant to produce a privilege log describing in detail all documents responsive to EEOC's discovery requests which are being withheld pursuant to any privilege.

## IV.   **THE FINANCIAL WORTH INFORMATION SOUGHT IS HIGHLY RELEVANT AND SUBJECT TO DISCLOSURE DURING THE DISCOVERY PHASE OF THIS CASE.**

The Civil Rights Act of 1991 provides that a complaining party may recover compensatory and punitive damages against a Defendant who has engaged in unlawful intentional discrimination in violation of Title VII.  See, 42 U.S.C. §1981A.   Furthermore, if a jury finds malice or reckless disregard for the complaining party's rights, the defendant may be liable for punitive damages up to the maximum amount allowed.  **Id.**   In its complaint, the EEOC clearly identified the specific employment practices it alleges were unlawful, i.e. that Defendant subjected Ms. Brockman to unwelcome sexual comments and/or physical contact of a sexual nature by members of management which was sufficiently severe and pervasive to constitute a hostile work environment; and that Ms. Brockman was constructively discharged from her position with Defendant because her working conditions became intolerable due to the persistent sexual harassment by member's of management and Defendant's failure to take any corrective action.  EEOC also asserted that such employment practices were  intentional and done with malice or with reckless indifference to Ms.Brockman's federally protected rights. Further, EEOC's prayer for relief expressly requested punitive damages

14

on behalf of Ms. Brockman.  (Exhibit 11).  Accordingly, Plaintiff EEOC has properly pled punitive damages in this case under <u>Fed. R. Civ. P.</u> Rule 8 and has identified the specific acts committed by the Defendant which provide a reasonable basis for recovery of such damages.

Throughout the discovery phase of this lawsuit EEOC has attempted to obtain information from the Defendant which is relevant to its claims in this lawsuit, including its claim for punitive damages.  In requesting information and/or documents, Federal Rule of Civil Procedure 26(b) permits the scope of discovery to include as follows:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

<u>Fed.R.Civ.P.</u> 26(b)(1).  The discovery provisions of the Federal Rules of Civil Procedure are to be broadly and liberally construed. <u>Hickman v. Taylor</u>, 67 S.Ct. 385, 392 (1947); <u>Burns v. Thiokol Chemical Corporation</u>, 483 F.2d 300, 305 (5th Cir. 1973), citing <u>Sanchez v. Standard Brands, Inc.</u> 431 F.2d 455 (5th Cir. 1970).[1]  The documents at issue here are clearly relevant to EEOC's claim for punitive damages.

Federal courts have consistently held that a Defendant's financial worth is relevant to a claim for punitive damages and is subject to disclosure during discovery. <u>See, City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 270 (1981) ("evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded"); <u>Rowlett v. Anheuser-Busch Inc.</u>, 832 F.2d 194,207 (1st. Cir. 1987) ("a rich defendant may well be required to

---

[1]   Cases decided by the former Fifth Circuit prior to October 1, 1981 are binding on the Eleventh Circuit. <u>Bonner v. Prichard</u>, 661 F.2d 1206 (11th Cir. 1981).

pay more than a poor one who committed the same wrong"); <u>Bessier v. Precise Tool & Engineering Co., Inc.</u>, 778 F. Supp. 150 (W.D. Mo. 1991) (plaintiff was granted discovery of defendant's financial records to prepare a case in the issue of punitive damages); <u>Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.</u>, 130 F.R.D. 149, 152 (D.Kansas 1990) ("plaintiff need not establish *prima facie* case on the issue of punitive damages before it can obtain pretrial discovery of defendant's financial statements."); and <u>Tillery v. Lynn</u>, 607 F.Supp. 399 (S.D. N.Y. 1985) (court held that discovery as to defendant's personal assets may be undertaken by plaintiff during pretrial discovery).

Here in the state of Florida , federal district courts have also consistently found financial worth information relevant and discoverable. In <u>EEOC v. Atlantis Golf Club, Inc.</u>, Civil Case No. 99-9077- CIV-HURLEY (S.D. Fla. 2001), EEOC alleged sexual harassment and retaliation against a member of management.  In that case the Defendant requested that the Court issue an order precluding the EEOC from taking a properly noticed deposition pursuant to <u>Fed.R.Civ. P</u>. 30(b)(6) regarding Defendant's financial worth.  The Court denied Defendant's Motion for Protective Order and to Quash Subpoena and ordered that Defendant produce within fourteen (14) days of the date of the order, a corporate representative to testify to Defendant's financial condition at a Rule 30(b)(6) deposition. (Exhibit 12).  Similarly, in <u>EEOC v. Inter-American Transport Equipment Co., Ltd.</u>, Civil Case No. 99-3377-CIV-UNGARO-BENAGES (S.D. Fla. 1999), EEOC alleged unlawful employment practices on the basis of sex, female.  The District Court granted the Commission's motion to compel financial worth discovery, finding that "[T]he majority of cases arising under federal law have been uniform in applying regular standards regarding discovery on the issue of punitive damages." (Exhibit 13).  Likewise, in <u>EEOC and Smith, Daniels, and Neel v. Geologistics Americas, Inc.</u>, Civil Case No. 3:01-CV-216-J-21-MORRIS (M.D. Fla. 2002), EEOC alleged that

Defendant unlawfully terminated the charging party's employment in retaliation for complaining of sex discrimination. The District Court denied Defendant's Emergency Motion to Quash stating, "[B]ecause the potential for punitive damages is present in the case, evidence of the Defendant's income and assets may be admissible and Plaintiff should be allowed discovery on those matters." (Exhibit 14).

The rationale behind the holdings in the above-referenced cases applies equally to the facts of this case. Here, the financial statements at issue are relevant to EEOC's claim for punitive damages and subject to disclosure during discovery. In fact, the information is not only relevant, but necessary for a jury to appropriately place a value on any award of punitive damages it may make.

Moreover, the unique facts in this case, i.e., Defendant's bankruptcy filing, makes disclosure of its financial worth information even more critical. Specifically, Plaintiffs must have information regarding Defendant's financial status in order to properly assess and prepare the case for the upcoming mediation and, if necessary, trial.

## V.    **CONCLUSION**

Based on the foregoing, EEOC respectfully requests that this Court grant EEOC's motion to compel Defendant to disclose annual reports and audited financial statements reflecting Defendant's financial condition responsive to EEOC's Request for Production #3, provide a privilege log for all documents withheld pursuant to privilege, and produce a copy Defendants insurance policy pursuant to Fed. R.Civ. P., Rule 26(a)(1)(D).

Respectfully submitted,

17

NICHOLAS M. INZEO
Acting Deputy General Council

GWENDOLYN YOUNG REAMS
Associate General Counsel

DELNER FRANKLIN THOMAS
Regional Attorney

MICHAEL J. FARRELL
Supervisory Attorney


JOHN C. WEAVER
Trial Attorney
Colorado Bar No. 030333
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Miami District Office
One Biscayne Tower
Two Biscayne Blvd.
Miami, Florida 33131
Telephone:  (305) 530-6007
Facsimile:   (305) 536-4494

18

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFF EEOC'S MOTION COMPEL

DISCOVERY  was served by facsimile and U.S. Mail this  21st  day of March, 2003, upon the

following:


Caran Rothchild, Esq.
Henry Latimer, Esq.
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, Florida 33301
Attorneys for Defendant, Daewoo Motor America, Inc.

Jill S. Schwartz, Esq,
Andrew G. Wedmore, Esq.
JILL S. SCHWARTZ & ASSOCIATES, P.A.
180 Park Avenue
Suite 200
Winter Park, Florida 32789
Attorneys for Plaintiff/Intervenor, Rebecca  Brockman (Anacleto)


John C. Weaver

19

# EXHIBIT  1

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:01-CV-879-ORL-28 KRS

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| DAEWOO MOTOR AMERICA, INC., | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT, DAEWOO MOTOR AMERICA, INC.'S,
AMENDED INITIAL DISCLOSURES PURSUANT TO
FED. R. CIV. P. 26(a)(1)(A)-(D)**

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)-(D), as well as the Case Management Report

submitted in the above referenced matter, Defendant, Daewoo Motor America, Inc. ("Daewoo"),

discloses and provides the following to Plaintiff, United States Equal Employment Opportunity

Commission ("Plaintiff"):

(A)     **the name and, if known, the address and telephone number of each individual likely
to have discoverable information that the disclosing party may use to support its
claims or defenses, unless solely for impeachment, identifying the subjects of the
information:**

Rebecca Anacleto f/k/a Rebecca M. Brockman
c/o Jill Schwartz & Associates, P.A.
180 Park Avenue, Suite 200
Winter Park, Florida 32789

CASE NO. 6:01-CV-879-ORL-28 KRS

Joseph Anacleto
385 Geronimo Court
Lake Mary, FL  32746

Robert "Bob" L. Bonfiglio
LAST KNOWN ADDRESS
2041 Claremont Drive
Deltona, FL  32725

James "Jim" K. Broman
LAST KNOWN ADDRESS
205 Dalewood Ct.
Debary, FL  32713

James P. Collins
LAST KNOWN ADDRESS
1410 W. 13th Place
Sanford, FL  32772

Mathew "Matt" H. Conner
LAST KNOWN ADDRESS
941 Lauren Kay Court
Lawrenceville, GA  30045

Gary Connelly
ADDRESS UNKNOWN

Robert "Bob" C. Dombek
LAST KNOWN ADDRESS
593 Spinnaker Way
Lake Mary, FL  32746

William "Bill" DuPont
LAST KNOWN ADDRESS
938 Vineridge Run, #106
Altamonte Springs, FL  32714

Mitchell "Mitch" J. Fazzio
LAST KNOWN ADDRESS
421 Sundown Trail
Casselbery, FL  32707

CASE NO. 6:01-CV-879-ORL-28 KRS

Nels J. Ferre
LAST KNOWN ADDRESS
334 Pine Shadow Lane
lake Mary, FL  32746



Donald "Don" W. Fyock
LAST KNOWN ADDRESS
210 Forrest Drive
Sanford, FL  32773

Gregg A. Ludemann
LAST KNOWN ADDRESS
2057 Shadow Dr.
Geneve, FL  32732

Kemuel "Kem" E. Maldonado
LAST KNOWN ADDRESS
123 Windchase Blvd.
Sandford, FL  32773

Tony L. Michelet
LAST KNOWN ADDRESS
1802 Bent Oak Court
Apopka, FL  32712

William "Bill" O. Nichols
LAST KNOWN ADDRESS
13 Cherry Laurel Court, #105
Winter Springs, FL  32708

Cheryl W. Pope
LAST KNOWN ADDRESS
7783 N. Branchwood Lane
Winter Park, FL  32792

Christopher "Chris" B. Rowe
LAST KNOWN ADDRESS
11138 Pondview Drive, #C
Orlando, FL  32825

Doreen M. Schwerdt
LAST KNOWN ADDRESS
2521 Grassy Point Drive, Apt. #11
Lake Mary, FL  32746

CASE NO. 6:01-CV-879-ORL-28 KRS

Ramona ("Mona") Simpson
LAST KNOWN ADDRESS
651 Tam Court
Winter Springs, FL  32708

Stephen A. Spence
LAST KNOWN ADDRESS
4808 Lake Ridge Road
Orlando, FL  32808

Robert D. Sullivan
LAST KNOWN ADDRESS
657 Cheltenham Avenue
Deltona, FL  32738

Jeanine Tesoro
Daewoo Motor America, Inc.
1055 West Victoria Street
Compton, CA  90220

Based upon information currently available to Daewoo, the persons identified above are believed
to possess information regarding the falsity of Plaintiff, EEOC, and Intervenor Plaintiff, Rebecca
Anacleto f/k/a Rebecca M. Brockman's, claims.


**(B)**     **a copy of, or a description by category and location of, all documents, data
compilations, and tangible things that are in the possession, custody, or control of
the party and that the disclosing party may use to support its claims or defenses,
unless solely for impeachment:**

1.     Personnel File of Rebecca Brockman

2.     10/25/2000 Charge of Discrimination of Rebecca Brockman.

3.     Documents produced by Plaintiff in response to Defendant's First Request to
Produce and bates numbered 1 through 267.


**(C)**     **computation of any category of damages claimed by the disclosing party, making
available for inspection and copying as under Rule 34, the documents or other
evidentiary material, not privileged or protected from disclosure, on which such
computation is based, including materials bearing on the nature and extent of
injuries suffered:**

Not applicable to Defendant, Daewoo Motor America, Inc.

CASE NO. 6:01-CV-879-ORL-28 KRS

**(D)    The inspection and copying, under Rule 34, any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

Daewoo maintains and has maintained at the time of the events in question a directors, officers and private company liability insurance policy including employment practices and securities liability policy with the National Union Fire Insurance Company of Pittsburgh, PA.  The policy number is 860-08-37.

Respectfully submitted,

GREENBERG TRAURIG, P.A.
Attorneys for Defendant, Daewoo Motor America, Inc.
515 East Las Olas Boulevard
Suite 1500
Fort Lauderdale, FL  33301
Telephone:  (954) 765-0500
Facsimile:  (954) 765-1477

By:    HENRY LATIMER
       Florida Bar No. 163217
       CARAN ROTHCHILD
       Florida Bar No. 983535
       *rothchildc@gtlaw.com*

CASE NO. 6:01-CV-879-ORL-28 KRS

## __CERTIFICATE OF SERVICE__

I hereby certify that a true and correct copy of the foregoing was delivered via regular U.S. Mail ~~and facsimile~~ this 7th day of January, 2002 to John C. Weaver. Esq., Equal Employment Opportunity Commission, One Biscayne Tower, 2 South Biscayne Boulevard, Suite 2700, Miami, FL 33131; and to Jill S. Schwartz, Esq. and Andrew G. Wedmore, Esq., Jill S. Schwartz & Associates, P.A., 180 Park Avenue North, Suite 200, Winter Park, FL 32789.

_____

CARAN ROTHCHILD

CASE NO. 6:01-CV-879-ORL-28 KRS

## SERVICE LIST

Henry Latimer, Esq.
Caran Rothchild, Esq.
Greenberg Traurig, P.A.
515 East Las Olas Boulevard
Suite 1500
Fort Lauderdale, FL  33301
Telephone:  (954) 765-0500
Facsimile:  (954) 765-1477
Attorneys for Defendant

John C. Weaver, Esq.
Equal Employment Opportunity Commission
One Biscayne Tower
2 South Biscayne Boulevard
Suite 2700
Miami, FL  33131
Telephone:  (305) 536-7247
Facsimile:  (305) 536-4494
Attorneys for Plaintiff

Jill S. Schwartz, Esq.
Andrew G. Wedmore, Esq.,
Jill S. Schwartz & Associates, P.A.
180 Park Avenue North
Suite 200
Winter Park, FL  32789
Telephone:  (407) 647-8911
Facsimile:  (407) 628-4994
Attorneys for Intervenor/Plaintiff

**EXHIBIT 2**



**GREENBERG**
ATTORNEYS AT LAW
**TRAURIG**

RECEIVED BY:
DATE __2-7-03__ *kc*

Caran Rothchild
(954) 768-8218
rothchildc@gtlaw.com

February 5, 2003

**VIA FACSIMILE AND U.S. MAIL**

John C. Weaver. Esq.
Equal Employment Opportunity Commission
One Biscayne Tower
2 South Biscayne Boulevard
Suite 2700
Miami, FL 33131

     Re:    *Daewoo Motor America, Inc. adv. United States Equal Employment Opportunity Commission* (Rebecca Brockman)
           U.S. District Court Case No. 6:01-CV-879-Orl-28KRS

Dear John:

    I am in receipt of your letter of January 31, 2003 regarding Daewoo Motor America, Inc.'s responses to the EEOC's discovery, and the EEOC's position relative thereto. In response, please note the following:

**REQUESTS FOR PRODUCTION:**

    With respect to Request for Production #1, without waiving any of its original objections, Daewoo will produce redacted copies of any non-privileged responsive documents relative to William DuPont, Donald Fyock, Kemul Maldonado, William Nichols, Cheryl Pope, and Doreen Schwerdt, to the extent any exist, at the offices of Daewoo's counsel at a mutually agreed upon date and time.

    With respect to Request for Production #2, Daewoo previously produced its employee handbook that was in effect during Intervenor Plaintiff Brockman's employ. It is not Daewoo's position that no other employment policies were ever used or implemented other than those provided in the Daewoo employee handbook.

    With respect to Request for Production #3, without waiving any of its original objections, Daewoo will produce any non-privileged responsive documents at the offices of Daewoo's counsel at a mutually agreed upon date and time.

GREENBERG TRAURIG, P.A.
POST OFFICE BOX 14036 FORT LAUDERDALE, FLORIDA 33302
401 EAST LAS OLAS BOULEVARD SUITE 2000 FORT LAUDERDALE, FLORIDA 33301  954-765-0500  FAX 954-765-1477  www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  CHICAGO  BOSTON  PHOENIX  WILMINGTON  LOS ANGELES  DENVER
FORT LAUDERDALE  BOCA RATON  WEST PALM BEACH  ORLANDO  TALLAHASSEE

Mr. John C. Weaver
February 5, 2003
Page 2

With respect to Request for Production #4, Daewoo previously responded that "exclusive of Intervenor Plaintiff Brockman's charge at issue in this matter, no such documents exist relative to any complaints of sexual harassment."

With respect to Request for Production #5, Daewoo produced all non-privileged documents it believes are responsive to Request for Production #5, to the extent any existed. A privilege log will be provided for any responsive documents withheld on the basis of any privilege.

## INTERROGATORIES:

With respect to Interrogatory 1-1., Daewoo produced all non-privileged documents it believes are responsive to Interrogatory 1-3, to the extent any existed. A privilege log will be provided for any responsive documents withheld on the basis of any privilege.

With respect to Interrogatory 1-2., Daewoo previously responded that "exclusive of Intervenor Plaintiff Brockman's charge at issue in this matter, no such documents exist relative to any complaints of sexual harassment."

With respect to Interrogatory 1-3., Daewoo previously provided the requested list of employees as Exhibit A to its Answers to the EEOC's Interrogatories. If you are aware of any inadvertent omissions from said list, please advise and we will investigate the matter.

## INITIAL DISCLOSURES:

With respect to Daewoo's Initial Disclosures, without waiving any of its original objections, Daewoo will produce any non-privileged responsive documents at the offices of Daewoo's counsel at a mutually agreed upon date and time.

Thank you for your attention to the foregoing. If you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

CARAN ROTHCHILD

CR/gr
cc:    Henry Latimer, Esq. (via hand delivery)
       Andrew Wedmore, Esq. (via U.S. Mail only)

\\fil-srv01\ROTHCHILDCM08598v01\8R9Y01!.DOC\2/5/03\48478.010600

**GREENBERG TRAURIG, P.A.**

**EXHIBIT  3**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:01-CV-879-ORL-28 KRS

UNITED STATES EQUAL EMPLOYMENT )
OPPORTUNITY COMMISSION, )
)
Plaintiff, )
)
vs. )
)
DAEWOO MOTOR AMERICA, INC., )
)
Defendant. )
_____ )

### DEFENDANT, DAEWOO MOTOR AMERICA, INC.'S, RESPONSE AND OBJECTIONS TO PLAINTIFF, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S, FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 33 of the Fed. R. Civ. P., Defendant, Daewoo Motor America, Inc. ("Daewoo"), responds to Plaintiff, Equal Employment Opportunity Commission's, First Request for Production (the "Requests"), and states as follows:

### GENERAL OBJECTIONS TO REQUEST TO PRODUCE

1. Daewoo objects generally to the Requests to the extent that they seek information protected by various privileges of confidentiality, including the attorney-client privilege and the attorney work product doctrine. Additionally, certain of the documents requested in the Requests may be otherwise private, confidential, or commercially sensitive information and will be provided by Daewoo upon entry of, and subject to, an appropriate protective order.

2. Daewoo objects generally to the Requests to the extent that they seek to impose burdens or duties upon Daewoo that are greater than are required by the Federal Rules of Civil Procedure and the Middle District of Florida's Local Rules.

## SPECIFIC RESPONSES TO REQUESTS FOR PRODUCTION

Subject to and without waiving the foregoing general objections, Daewoo responds to the Requests as follows:

1.  Please provide any and all documents within your possession, custody or control which are or have been maintained with respect to the following individuals, including, but not limited to, personnel files, personnel action notices, notes kept by their supervisor(s), disciplinary documents and/or commendations:

    a.   Rebecca Brockman
    b.   James "Jim" Broman
    c.   Matt Conner
    d.   William "Bill" Dupont
    e.   Mitch Fazzio
    f.   Nels Ferre
    g.   Don Fyock
    h.   Kemul Maldonado
    i.   William Nichols
    j.   Cheryl Pope
    k.   Doreen Schwerdt

    **Response**:

    Daewoo objects to Request for Production number 1 because, *inter alia*, it is overly broad, vague, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence in that, *inter alia*, it requests information completely unrelated and dissimilar to that of the charge filed by Intervenor Plaintiff Brockman, and calls for production of information that is confidential and would be an invasion of individual privacy rights. Without waiving its objections, Daewoo will produce non-privileged personnel files relative to Rebecca Brockman, James Broman, Mitchell Fazzio, and Nels Ferre at the offices of Daewoo's counsel at a mutually agreed upon date and time.

2.  Please provide copies of any and all of your employment policies, including, but not limited to, employee handbooks, disciplinary policies and EEO policies, in existence at any time during Rebecca Brockman's employment with the Defendant, regardless of whether such policy was ever used, implemented or made known to any of the Defendant's employees.

**Response:**

> With respect to Request for Production number 2, Daewoo will produce its employee handbook that was in effect during Intervenor Plaintiff Brockman's employ at the offices of Daewoo's counsel at a mutually agreed upon date and time.

3.   Please provide the Defendant Corporation's annual reports and audited financial statements reflecting Defendant's revenues, assets, and net worth from 1998 to present.

**Response:**

> Daewoo objects to Request for Production number 3 on the basis that it, *inter alia*, is irrelevant to the issues in the case, overbroad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

4.   Please provide copies of any and all documents relating to each and every complaint of sexual harassment made against Mitch Fazzio, Jim Broman, Nels Ferre, and any other current or former employee of Defendant, who worked at Defendant's Sanford work-site from September 1998 through present, including, but not limited to, written complaints, witness statements and all documents relating to any investigation of such complaints.

**Response:**

> Daewoo objects to request for production number 4 on the basis that it is irrelevant to the issues in the case, overbroad, burdensome, not reasonably calculated to lead to the discovery of admissible evidence, in that, *inter alia*, it requests information regarding individuals completely unrelated and dissimilar to those identified by Plaintiff EEOC in its Complaint. Notwithstanding the foregoing objections, and without waiving them, Daewoo states that, exclusive of Intervenor Plaintiff Brockman's charge at issue in this matter, no such documents exist relative to any complaints of sexual harassment.

5.   Please provide copies of any and all of Defendant's internal communications relating to any fact or matter alleged in EEOC's Complaint including, but not limited to, internal memoranda, correspondence, messages and notes.

**Response**:

> Daewoo objects to Request for Production number 5 because, *inter alia*, it calls for production of information that is confidential and/or protected from disclosure by the attorney-client privilege and/or attorney work product doctrine.  Without waiving its objections, Daewoo will produce non-privileged documents it believes are responsive to Request for Production number 5, to the extent any exist, at the offices of Daewoo's counsel at a mutually agreed upon date and time.

6.    Please provide copies of any and all log books, journals and diaries maintained by Defendant's management at Daewoo Motor America, Inc., d/b/a Daewoo of Seminole, 4165 N. U.S. Highway 17-92, Sanford, Florida  32773, during Mitch Fazzio's, Jim Broman's, and Nels Ferre's employment at that location.

**Response**:

> Daewoo objects to Request for Production number 6 because, *inter alia*, it is overly broad, vague, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence in that, *inter alia*, it requests information completely unrelated and dissimilar to that of the charge filed by Intervenor Plaintiff Brockman, and it calls for production of information that is confidential, commercially sensitive, proprietary, and/or protected from disclosure by the attorney-client privilege and/or attorney work product doctrine.  Without waiving its objections, Daewoo will produce non-privileged documents it believes are responsive to Request for Production number 6, to the extent any exist, at the offices of Daewoo's counsel at a mutually agreed upon date and time.

7.    Please provide copies of any and all documents identified in your Answer to Interrogatory 1-3.

**Response**:

> Daewoo objects to Request for Production number 7 because, *inter alia*, it calls for production of information that is confidential and/or protected from disclosure by the attorney-client privilege and/or attorney work product doctrine.  Without waiving its objections, Daewoo will produce non-privileged documents it believes are responsive to Request for Production number 7, to the

extent any exist, at the offices of Daewoo's counsel at a mutually agreed upon date and time.

8.     Please provide copies of any and all documents identified in your Answer to Interrogatory 1-4.

**Response:**

Daewoo objects to request for production number 8 on the basis that it is irrelevant to the issues in the case, overbroad, burdensome, not reasonably calculated to lead to the discovery of admissible evidence, in that, *inter alia*, it requests information regarding individuals completely unrelated and dissimilar to those identified by Plaintiff EEOC in its Complaint. Notwithstanding the foregoing objections, and without waiving them, Daewoo states that, exclusive of Intervenor Plaintiff Brockman's charge at issue in this matter, no such documents exist relative to any complaints of sexual harassment.

9.     Please provide copies of any and all documents identified in your Answer to Interrogatory 1-8.

**Response:**

Not applicable.

10.    Please provide copies of any and all documents which relate to the complaints listed in your Answer to Interrogatory 1-5.

**Response:**

Not applicable.

11.    Please provide copies of any and all documents which support your denials of Paragraphs 4, 5 and 6 of EEOC's Complaint.

**Response:**

Daewoo objects to the extent that Request for Production number 11 seeks counsel's mental impressions as to what information and documents support the denials Daewoo asserts. Without waiving its objections, Daewoo states that the information upon which it will

rely on for each denial is undetermined at this time as Daewoo has not completed its investigation and discovery into the allegations contained in Plaintiff's Complaint. Daewoo further objects to Request for Production number 11 because, *inter alia*, it is vague, ambiguous, overbroad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

12.    Please provide copies of any and all documents which support your denials of Paragraphs 7 through 10 of EEOC's Complaint.

   **Response:**

   Daewoo objects to the extent that Request for Production number 12 seeks counsel's mental impressions as to what information and documents support the denials Daewoo asserts. Without waiving its objections, Daewoo states that the information upon which it will rely on for each denial is undetermined at this time as Daewoo has not completed its investigation and discovery into the allegations contained in Plaintiff's Complaint. Daewoo further objects to Request for Production number 12 because, *inter alia*, it is vague and ambiguous, and it calls for production of information that is confidential and/or protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Without waiving its objections, Daewoo will produce non-privileged documents it believes are responsive to Request for Production number 12, to the extent any exist, at the offices of Daewoo's counsel at a mutually agreed upon date and time.

13.    Please provide copies of any and all documents which support the 2nd and 5th Affirmative Defenses raised in your Answer to EEOC's Complaint.

   **Response:**

   Daewoo objects to the extent that Request for Production number 13 seeks counsel's mental impressions as to what information and documents support the defenses Daewoo asserts. Without waiving its objections, Daewoo states that the information upon which it will rely on for each defense is undetermined at this time as Daewoo has not completed its investigation and discovery into the allegations contained in Plaintiff's Complaint. Daewoo further objects to Request for Production number 13 because, *inter alia*, it is vague and ambiguous, and calls for production of information that is confidential and/or protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Without waiving

its objections, Daewoo will produce non-privileged documents it believes are responsive to Request for Production number 13, to the extent any exist, at the offices of Daewoo's counsel at a mutually agreed upon date and time.

14.    Please provide copies of any and all documents which support the 3rd and 4th Affirmative Defenses raised in your Answer to EEOC's Complaint.

**Response**:

Daewoo objects to the extent that Request for Production number 14 seeks counsel's mental impressions as to what information and documents support the defenses Daewoo asserts. Without waiving its objections, Daewoo states that the information upon which it will rely on for each defense is undetermined at this time as Daewoo has not completed its investigation and discovery into the allegations contained in Plaintiff's Complaint. Daewoo further objects to Request for Production number 14 because, *inter alia*, it is vague and ambiguous, and it calls for production of information that is confidential and/or protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Without waiving its objections, Daewoo will produce non-privileged documents it believes are responsive to Request for Production number 14, to the extent any exist, at the offices of Daewoo's counsel at a mutually agreed upon date and time.

15.    Please provide copies of any and all documents which support the 9th Affirmative Defense raised in your Answer to EEOC's Complaint.

**Response**:

Daewoo objects to the extent that Request for Production number 15 seeks counsel's mental impressions as to what information and documents support the defenses Daewoo asserts. Without waiving its objections, Daewoo states that the information upon which it will rely on for each defense is undetermined at this time as Daewoo has not completed its investigation and discovery into the allegations contained in Plaintiff's Complaint. Daewoo further objects to Request for Production number 15 because, *inter alia*, it is vague and ambiguous, and it calls for production of information that is confidential and/or protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Without waiving its objections, Daewoo will produce non-privileged documents it believes are responsive to Request for Production number 15, to

the extent any exist, at the offices of Daewoo's counsel at a mutually agreed upon date and time.

GREENBERG TRAURIG, P.A.
Attorneys for Defendant, Daewoo Motor America, Inc.
515 East Las Olas Boulevard
Suite 1500
Fort Lauderdale, FL 33301
Telephone: (954) 765-0500
Facsimile: (954) 765-1477

By:   HENRY LATIMER
Florida Bar No. 163217
CARAN ROTHCHILD
Florida Bar No. 983535
*rothchildc@gtlaw.com*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was delivered via regular U.S. Mail this **30** day of January, 2002 to John C. Weaver. Esq., Equal Employment Opportunity Commission, One Biscayne Tower, 2 South Biscayne Boulevard, Suite 2700, Miami, FL 33131; and to Jill S. Schwartz, Esq. and Andrew G. Wedmore, Esq., Jill S. Schwartz & Associates, P.A., attorneys for Intervenor Plaintiff, 180 Park Avenue North, Suite 200, Winter Park, FL 32789.

CARAN ROTHCHILD

## SERVICE LIST

Henry Latimer, Esq.
Caran Rothchild, Esq.
Greenberg Traurig, P.A.
515 East Las Olas Boulevard
Suite 1500
Fort Lauderdale, FL  33301
Telephone:  (954) 765-0500
Facsimile:  (954) 765-1477
Attorneys for Defendant, Daewoo Motor America, Inc.

John C. Weaver. Esq.
Equal Employment Opportunity Commission
One Biscayne Tower
2 South Biscayne Boulevard
Suite 2700
Miami, FL  33131
Telephone:  (305) 536-7247
Facsimile:  (305) 536-4494
Attorneys for Plaintiff

Jill S. Schwartz, Esq.
Andrew G. Wedmore, Esq.,
Jill S. Schwartz & Associates, P.A.
180 Park Avenue North
Suite 200
Winter Park, FL  32789
Telephone:  (407) 647-8911
Facsimile:  (407) 628-4994
Attorneys for Intervenor/Plaintiff

# EXHIBIT  4

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:01-CV-879-ORL-28 KRS

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| DAEWOO MOTOR AMERICA, INC., | ) ) |
| Defendant. | ) ) ) |

**DEFENDANT, DAEWOO MOTOR AMERICA, INC.'S, RESPONSES AND
OBJECTIONS TO PLAINTIFF, EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION'S, FIRST SET OF INTERROGATORIES**

Defendant, Daewoo Motor America, Inc. ("Daewoo"), hereby responds and objects to

Plaintiff EEOC's First Set of Interrogatories as follows:

**GENERAL OBJECTIONS**

A.     Daewoo objects generally to the Interrogatories to the extent that they seek

information that is protected by various privileges of confidentiality, including the attorney-client

privilege and the attorney work product doctrine.  In addition, certain of the information requested

in the Interrogatories is otherwise private, confidential, or commercially sensitive information and

will be provided by Daewoo upon entry of, and subject to, an appropriate protective order.

B.     Daewoo objects generally to the Interrogatories, including the definitions and

instructions in the Interrogatories, to the extent that they seek to impose burdens or duties upon

Daewoo that are greater than are required by the Federal Rules of Civil Procedure, the Local Rules of the Middle District of Florida, and/or applicable law.

C.    Daewoo reserves the right, but does not assume any obligation beyond those imposed upon it by the Federal Rules of Civil Procedure, the Local Rules of the Middle District of Florida and/or applicable law, to supplement, amend, and/or append its answers upon further investigation and discovery into the allegations of Plaintiff EEOC's Complaint.

## SPECIFIC RESPONSES TO INTERROGATORIES

1-1.    Please provide the name, address, telephone number, social security number, place of employment and job title of any person who has, claims to have or whom you believe may have knowledge or information pertaining to any fact alleged in the pleadings filed in this action (including denials and affirmative defenses raised in the Answer to Plaintiff EEOC's Complaint), or any fact underlying the subject matter of this action.

**ANSWER:**

Daewoo objects to Interrogatory No. 1-1 because, *inter alia*, it is overbroad and calls for production of information that is confidential and would be an invasion of individual privacy rights. Without waiving its objections, Daewoo states that the names and last known addresses of the witnesses known or believed at this time to have knowledge or information relevant to the allegations set forth in the pleadings are as follows:

Rebecca Anacleto f/k/a Rebecca M. Brockman
c/o Jill Schwartz & Associates, P.A.
180 Park Avenue, Suite 200
Winter Park, FL  32789

Joseph Anacleto
385 Geronimo Court
Lake Mary, FL  32746

Robert "Bob" L. Bonfiglio
2041 Claremont Drive
Deltona, FL  32725

James "Jim" K. Broman
205 Dalewood Ct.
Debary, FL  32713

James P. Collins
1410 W. 13th Place
Sanford, FL  32772

Matt H. Conner
941 Lauren Kay Court
Lawrenceville, GA  30045

Gary Connelly
Daewoo Motor America, Inc.
1055 West Victoria Street
Compton, CA  90220

Robert "Bob" C. Dombek
593 Spinnaker Way
Lake Mary, FL  32746

William "Bill" DuPont
938 Vineridge Run, #106
Altamonte Springs, FL  32714

Mitchell "Mitch" J. Fazzio
421 Sundown Trail
Casselbery, FL  32707

Nels J. Ferre
334 Pine Shadow Lane
Lake Mary, FL  32746

Donald "Don" W. Fyock
210 Forrest Drive
Sanford, FL  32773

Gregg A. Ludemann
2057 Shadow Dr.
Geneve, FL  32732

Kemuel "Kem" E. Maldonado
123 Windchase Blvd.
Sanford, FL  32773

Tony L. Michelet
1802 Bent Oak Court
Apopka, FL  32712

William "Bill" O. Nichols
13 Cherry Laurel Court, #105
Winter Springs, FL  32708

Cheryl W. Pope
7783 N. Branchwood Lane
Winter Park, FL  32792

Christopher "Chris" B. Rowe
11138 Pondview Drive, #C
Orlando, FL  32825

Doreen M. Schwerdt
2521 Grassy Point Drive, Apt. #11
Lake Mary, FL  32746

Ramona "Mona" Simpson
651 Tam Court
Winter Springs, FL  32708

Stephen A. Spence
4808 Lake Ridge Road
Orlando, FL  32808

Robert D. Sullivan
657 Cheltenham Avenue
Deltona, FL  32738

Jeanine Tesoro
Daewoo Motor America, Inc.
1055 West Victoria Street
Compton, CA  90220

1-2.  Please state the specific nature and substance of the knowledge that you believe the
persons(s) identified in your response to Interrogatory 1-1 may have.

**ANSWER:**

Each individual is likely to have discoverable information of the
falsity of Plaintiff EEOC's and Intervenor Plaintiff Brockman's
claims in this matter.

1-3.  Identify any and all documents and recorded materials (including, not but limited to,

transcripts, tapes, videos, personnel records and files, notes, memoranda, letters to or

from supervisors, supervisors' notes, documents regarding separation and/or termination

from employment, disciplinary files and/or any other employment information contained

in a file of any type, etc.) pertaining or relating in any way to any interviews and/or

investigation into any sexual harassment or constructive discharge allegations by Rebecca

Brockman against Defendant.

**ANSWER:**

Daewoo objects to Interrogatory no. 1-3 because, *inter alia*, it calls
for production of information that is confidential and/or protected
from disclosure by the attorney-client privilege and/or attorney
work product doctrine.  Without waiving its objections, Daewoo
will produce non-privileged documents it believes are responsive
to Interrogatory no. 1-3, to the extent any exist, at the offices of
Daewoo's counsel at a mutually agreed upon date and time.

1-4.  Identify any and all documents and recorded materials (including, not but limited to,

transcripts, tapes, videos, personnel records and files, notes, memoranda, letters to or

from supervisors, supervisors' notes, documents regarding separation and/or termination

from employment, disciplinary files and/or any other employment information contained

in a file of any type, etc.) pertaining or relating in any way to any interviews and/or

investigation into any complaints regarding sexual harassment, verbal or written, against

Defendant by any current or former employee at Defendant's Sanford work-site.

**ANSWER**:

> Daewoo objects to Interrogatory no. 1-4 on the basis that it is
> irrelevant to the issues in the case, overbroad, burdensome, not
> reasonably calculated to lead to the discovery of admissible
> evidence, in that, *inter alia*, it requests information regarding
> individuals completely unrelated and dissimilar to those identified
> by Plaintiff EEOC in its Complaint.   Notwithstanding the
> foregoing objections, and without waiving them, Daewoo states
> that, exclusive of Intervenor Plaintiff Brockman's charge at issue in
> this matter, no such documents exist relative to any complaints of
> sexual harassment.

1-5.   Please provide the name, gender, last known address and telephone number, and social

security number of all individuals who were employed by you at Daewoo of Seminole,

4165 N. U.S. Highway 17-92, Sanford, FL 32773, during Mitch Fazzio's, Jim Broman's,

and Nels Ferre's employment at that location.   State whether or not each individual is

currently employed by Daewoo of America, Inc., in any capacity.

**ANSWER**:

> Daewoo objects to Interrogatory No. 1-5 to the extent it calls for
> production of information that is confidential and would be an
> invasion of individual privacy rights.   In addition, Daewoo objects
> to Interrogatory No. 1-5 because it is overbroad, to the extent it
> seeks information outside Intervenor Plaintiff Brockman's period
> of employment with Daewoo.   Without waiving its objections,
> Daewoo directs attention to Exhibit A attached hereto.

1-6.   Please list the name, last known address and telephone number and social security

number of each individual who has ever complained of sexual harassment by a member

of management while employed by you at your Daewoo of Seminole facility, located at 4165 N. U.S. Highway 17-92, Sanford, Florida 32771.  For each individual listed state whether that individual's complaint(s) was (were) made verbally or in writing, the nature of the complaint(s) and the individual(s) to whom the complaint(s) was (were) made and what action, if any, was taken by Defendant.

**ANSWER:**

> Daewoo objects to Interrogatory No. 1-6 to the extent it calls for production of information that is confidential and would be an invasion of individual privacy rights.  In addition, Daewoo objects to Interrogatory No. 1-6 because it is overbroad, to the extent it seeks information outside Intervenor Plaintiff Brockman's period of employment with Daewoo.  Without waiving its objections, Daewoo states that, exclusive of Intervenor Plaintiff Brockman's charge at issue in this matter, no such complaints are known of at this time.

1-7.   Please identify each person whom you may use as an expert witness at trial.  For each person identified, state in detail the substance of the opinions to be provided.

**ANSWER:**
> Undetermined at this time.

1-8.   Please provide the tenure of service for the following current or former employees: Mitch Fazzio, James Broman, and Nels Ferre.

**ANSWER:**
> *See* Exhibit A attached hereto.

1-9.   Please identify any and all documents pertaining to any fact alleged in any pleading filed in this action (including the denials and affirmative defenses raised in the Answer to Plaintiff EEOC's Complaint).

ANSWER:

> *See* Defendant, Daewoo Motor America, Inc.'s, Response to Plaintiff, Equal Employment Opportunity Commission's, First Request for Production of Documents.

1-10.   Please describe in detail each fact upon which Defendant relies to assert its denial of Paragraph 4 and 5 of Plaintiff EEOC's Complaint in this action.

ANSWER:

> Daewoo objects to the extent that Interrogatory No. 1-10 seeks counsel's mental impressions as to what information supports the denials Daewoo asserts. Without waiving its objections, Daewoo states that the information upon which it will rely on for each denial is undetermined at this time as Daewoo has not completed its investigation and discovery into the allegations contained in Plaintiff EEOC's Complaint. Notwithstanding the foregoing objections, and without waiving them, Daewoo states as follows:

> Paragraph 4 of the Complaint makes allegations against "Daewoo Motor, Inc.", not Daewoo Motor America, Inc. Moreover, and in any event, Daewoo Motor America, Inc. is not a California corporation and is not presently doing business in the State of Florida, Seminole County, or the City of Sanford. Consequently, Daewoo denies the allegations of paragraph 4 of the Complaint.

> Paragraph 5 of the Complaint similarly incorrectly defines Employer as "Daewoo Motor, Inc.," and not Daewoo Motor America, Inc. Consequently, Daewoo denies the allegations of paragraph 5 of the Complaint.

1-11.   Please describe in detail each fact upon which Defendant relies to assert its denial of Paragraph 6 of Plaintiff EEOC's Complaint in this action.

**ANSWER**

> Daewoo objects to the extent that Interrogatory No. 1-11 seeks
> counsel's mental impressions as to what information supports the
> denials Daewoo asserts.  Without waiving its objections, Daewoo
> states that the information upon which it will rely on for each denial
> is undetermined at this time as Daewoo has not completed its
> investigation and discovery into the allegations contained in Plaintiff
> EEOC's Complaint.

1-12.  Please describe in detail each fact upon which Defendant relies to support it's 2nd and

5th affirmative defense raised in its answer.

**ANSWER**:

> Daewoo objects to the extent that Interrogatory No. 1-12 seeks
> counsel's mental impressions as to what information supports the
> defenses Daewoo asserts.  Without waiving its objections, Daewoo
> states that the information upon which it will rely on for each defense
> is undetermined at this time as Daewoo has not completed its
> investigation and discovery into the allegations contained in Plaintiff
> EEOC's Complaint.

1-13.  Please describe in detail each fact upon which Defendant relies to support it's 3rd and 4th

affirmative defense raised in its answer.

**ANSWER**:

> Daewoo objects to the extent that Interrogatory No. 1-13 seeks
> counsel's mental impressions as to what information supports the
> defenses Daewoo asserts.  Without waiving its objections, Daewoo
> states that the information upon which it will rely on for each defense
> is undetermined at this time as Daewoo has not completed its
> investigation and discovery into the allegations contained in Plaintiff
> EEOC's Complaint.  Notwithstanding the foregoing objections, and
> without waiving them, Daewoo states as follows:
>
> *See* Answer to Interrogatory 1-15 *infra*.

1-14.  Please describe in detail each fact upon which Defendant relies to support it's 9th affirmative defense raised in its answer.

**ANSWER**:

> Daewoo objects to the extent that Interrogatory No. 1-14 seeks counsel's mental impressions as to what information supports the defenses Daewoo asserts.  Without waiving its objections, Daewoo states that the information upon which it will rely on for each defense is undetermined at this time as Daewoo has not completed its investigation and discovery into the allegations contained in Plaintiff EEOC's Complaint.

1-15.  Please describe in detail each fact upon which Defendant relies to assert its denial with respect to Paragraphs 7 through 10 of Plaintiff EEOC's Complaint in this action.

**ANSWER**:

> Daewoo objects to the extent that Interrogatory No. 1-15 seeks counsel's mental impressions as to what information supports the denials Daewoo asserts.  Without waiving its objections, Daewoo states that the information upon which it will rely on for each denial is undetermined at this time as Daewoo has not completed its investigation and discovery into the allegations contained in Plaintiff EEOC's Complaint.  Notwithstanding the foregoing objections, and without waiving them, Daewoo states as follows:

> **1.    Re: Mitch Fazzio.**

> Plaintiff EEOC's and Intervenor Plaintiff Brockman's allegations with respect to Mr. Fazzio are meritless.  Specifically, Mr. Fazzio was employed at Daewoo Seminole as Finance and Insurance Manager from December 3, 1998 until January 25, 2000 when he was transferred out of Daewoo Seminole and to the Franchise Development Team.  Mr. Fazzio later returned to Daewoo Seminole on an interim basis on February 8, 2000, to fill the position of General Manager until a permanent replacement could be found.  Prior to February 8, 2000, Mr. Fazzio was not Intervenor Plaintiff Brockman's supervisor, and Intervenor Plaintiff Brockman never complained about Mr. Fazzio, or about any purported "sexual harassment" of any kind by anyone at Daewoo Seminole.

10

On February 8, 2000, and <u>prior</u> to Mr. Fazzio's arrival at Daewoo Seminole, Intervenor Plaintiff Brockman went to Doreen Schwerdt, the Daewoo Seminole Office Manager, and expressed her general dislike of Mr. Fazzio, and her resentment that Mr. Fazzio would be replacing the previous General Manager, whom Intervenor Plaintiff Brockman had a friendly relationship with. Thereafter, and for the first time, Intervenor Plaintiff Brockman contacted Daewoo's Human Resources Department to discuss Mr. Fazzio. At that time, Intervenor Plaintiff Brockman indicated that "Mitch Fazzio has made it a habit of touching female employees[,] ... has continuously spoke negatively about employees and his bosses to other employees[,] [and] ... has [] made a habit of discussing inappropriate company business to those beneath him. ... [And] [f]or this reason I am going home today." Intervenor Plaintiff Brockman made no mention of any harassment, sexual or otherwise, suffered by her or directed towards her by Mr. Fazzio, and made no mention of any complaints against any other Daewoo Seminole employees.

Shortly thereafter, i.e., within ten (10) days, Mr. Fazzio was transferred out of Daewoo Seminole, and back to the Franchise Development Team.

## 2.    Re: Co-workers.

Plaintiff EEOC's and Intervenor Plaintiff Brockman's allegations with respect to co-workers James Broman and Nels Ferre are meritless. Prior to February 8, 2000, Intervenor Plaintiff Brockman never complained about any purported "sexual harassment" of any kind by anyone at Daewoo Seminole. In addition, when Intervenor Plaintiff Brockman contacted Daewoo's Human Resources Department on February 8, 2000, she made no mention of anyone other than Mr. Fazzio.

In late February, 2000, since Mr. Fazzio was no longer there, Intervenor Plaintiff Brockman for the first time made vague accusations about supposed comments by two co-workers, James Broman and Nels Ferre, that she purportedly perceived were sexual in nature. Intervenor Plaintiff Brockman never complained to Daewoo of any purported hugging, groping, or touching of any kind by Mr. Broman or Mr. Ferre, until April 7, 2000, the day she voluntarily resigned (i.e., in her letter of resignation), wherein she made such an allegation against Mr. Broman for the first time.

Intervenor Plaintiff Brockman herself openly used off-color

language and discussed sex and her sex life with co-workers, male and female. She told male co-workers that she was "not put off by colorful language and it [did] not offend [her]." And, on at least one occasion, Intervenor Plaintiff Brockman told several co-workers, male and female, that her ex-boyfriend's new girlfriend was a "cum guzzling slut." In addition, Intervenor Plaintiff Brockman frequently brought suggestive magazines and catalogs to the workplace, including lingerie catalogs such as Victoria's Secret. Intervenor Plaintiff Brockman shared the contents of those catalogs and magazines with both male and female co-workers.

On or before April 12, 2000, following her voluntary resignation, Intervenor Plaintiff Brockman was given an unconditional offer of reinstatement to her position with Daewoo. However, Intervenor Plaintiff Brockman declined Daewoo's offer, and thereafter, on or about May 25, 2000, Daewoo Seminole was closed in its entirety, and all remaining Daewoo Seminole employees were discharged during a Reduction in Force ("RIF").

Daewoo reserves the right, but does not assume any obligation beyond those imposed upon it by the Federal Rules of Civil Procedure, the Local Rules of the Middle District of Florida and/or applicable law, to supplement, amend, and/or append its answer upon further investigation and discovery into the allegations of Plaintiff EEOC's Complaint

1-16.   Identify all documents consulted, examined, reviewed, referred to, or relied upon in formulating the answers to Plaintiff EEOC's First Set of Interrogatories to Defendant and for each such document, specify the interrogatory for which such use was made.

**ANSWER**:

Daewoo objects to Interrogatory no. 1-16 because, *inter alia*, it calls for production of information that is confidential and/or protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Without waiving its objections, Daewoo will produce non-privileged documents it believes are responsive to Interrogatory no. 1-16, to the extent any exist, at the offices of Daewoo's counsel at a mutually agreed upon date and time.

1-17.   Identify each person who has supplied information in response to each of these interrogatories, and identify each interrogatory for which each individual supplied information.

   **ANSWER**:

       Caran Rothchild, Esq.
       Greenberg Traurig, P.A.
       Attorneys for Defendant
       SunTrust Center, Suite 1500
       515 East Las Olas Boulevard
       Fort Lauderdale, FL  33301

       Stuart Weinstein, Esq.
       General Counsel, Daewoo Motor America, Inc.
       1055 West Victoria Street
       Compton, CA  90220

## VERIFICATION

    I, _Stuart Weinstein_____ being first duly sworn upon my oath, depose and state that I have read the foregoing Answers to Interrogatories, and that said answers are true and correct this _29th_ day of January, 2002.

DAEWOO MOTOR AMERICA, INC.

By: _Stuart Weinstein_____
Signature

Its: _Stuart Weinstein_____
    General Counsel

_____
Printed name

STATE OF CALIFORNIA
COUNTY OF _Los Angeles____

    BEFORE ME, the undersigned authority, personally appeared _Stuart Weinstein__, who is the _General Counsel__ of Daewoo Motor America, Inc. and who is (✓) personally known to me or ( ) has produced _____ as identification, and has taken an oath that the foregoing Answers to Interrogatories are true and correct.

DATED: _January 29,_____, 2002.

SALLY WACHI
Commission #1177288
Notary Public - California
Los Angeles County
My Comm. Expires Mar 23, 2002

_Sally Wachi_____

NOTARY PUBLIC, State of _California__

14

As to objections:

CARAN ROTHCHILD
Florida Bar No. 983535
GREENBERG TRAURIG, P.A.
Attorneys for Defendant, Daewoo Motor America, Inc.
515 East Las Olas Boulevard
Suite 1500
Fort Lauderdale, Florida 33301
Telephone: 954/765-0500
Facsimile: 954/765-1477


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Responses and Objections to First Set of Interrogatories to Defendant was delivered via regular U.S. Mail this 4th day of January, 2002 to John C. Weaver. Esq., Equal Employment Opportunity Commission, One Biscayne Tower, 2 South Biscayne Boulevard, Suite 2700, Miami, FL 33131; and to Jill S. Schwartz, Esq. and Andrew G. Wedmore, Esq., Jill S. Schwartz & Associates, P.A., 180 Park Avenue North, Suite 200, Winter Park, FL 32789.

CARAN ROTHCHILD

15

## SERVICE LIST

Henry Latimer, Esq.
Caran Rothchild, Esq.
Greenberg Traurig, P.A.
515 East Las Olas Boulevard
Suite 1500
Fort Lauderdale, FL  33301
Telephone:  (954) 765-0500
Facsimile:  (954) 765-1477
Attorneys for Defendant, Daewoo Motor America, Inc.

John C. Weaver. Esq.
Equal Employment Opportunity Commission
One Biscayne Tower
2 South Biscayne Boulevard
Suite 2700
Miami, FL  33131
Telephone:  (305) 536-7247
Facsimile:  (305) 536-4494
Attorneys for Plaintiff

Jill S. Schwartz, Esq.
Andrew G. Wedmore, Esq.,
Jill S. Schwartz & Associates, P.A.
180 Park Avenue North
Suite 200
Winter Park, FL  32789
Telephone:  (407) 647-8911
Facsimile:  (407) 628-4994
Attorneys for Intervenor/Plaintiff

\\fl-srv01\ROTHCHILDC\367872v01\7V%_01¹ DOC\1/29/02\48478 010600

# Daewoo Motor America, Inc.
## Daewoo Seminole, Florida Employees

4165 North Highway 17 & 92
Sanford, FL 32773

| Name | | Sex | | Address |
|---|---|---|---|---|
| Robert ("Bob") L. Bonfiglio | 05/25/2000 | M | | 2041 Claremont Drive Deltona, FL 32725 |
| Rebecca M. Brockman | 04/07/2000 | F | | 385 Geronimo Ct. Lake Mary, FL 32746 |
| James ("Jim") K. Broman | 05/12/2000 | M | 08/18/1999 | 205 Dalewood Court DeBary, FL 32713 |
| Tony L. Carr | 08/13/1999 | M | | Unknown |
| James P. Collins | 05/25/2000 | M | | 1410 W. 13th Place Sanford, FL 32772 |
| Matt H. Connor | 01/07/2000 | M | | 941 Lauren Kay Court Lawrenceville, GA 30045 |
| Robert ("Bob") C. Dombek | 05/25/2000 | M | | 593 Spinnaker Way Lake Mary, FL 32746 |
| William ("Bill") D. DuPont | 02/07/2000 | M | | 938 Vineridge Run, #106 Altamonte Springs, FL 32714 |
| Mitchell "Mitch" J. Fazzio | 04/23/1999 Rehired 05/25/1999 08/30/2001 | M | 12/03/1998 | 421 Sundown Terrace Casselberry, FL 32707 |
| Nels J. Ferre | 05/25/2000 | M | 10/11/1999 | 334 Pine Shadow Lane Lake Mary, FL 32746 |
| Donald ("Don") W. Fyock | 02/07/2000 | M | | 210 Forrest Drive Sanford, FL 32773 |

EXHIBIT A

| Name | | | Sex | | Date | Address |
|---|---|---|---|---|---|---|
| Max G. Hutton | | | M | | 05/25/2000 | 5200 Sugar Crest Drive<br>Sugar Hill, GA 30518 |
| Gregg A. Ludemann | | | M | | 05/25/2000 | 2057 Shadow Dr.<br>Geneve, FL 32732 |
| Kemuel ("Kem") E. Maldonado | | | M | | 05/25/2000 | 123 Windchase Blvd.<br>Sanford, FL 32773 |
| Tony L. Michelet | | | M | | 05/08/2000 | 1802 Bent Oak Ct.<br>Apopka, FL 32712 |
| William ("Bill") O. Nichols | | | M | | 05/25/2000 | 13 Cherry Laurel Ct. #105<br>Winter Springs, FL 32708 |
| Cheryl W. Pope | | | F | | 05/25/2000 | 7783 N. Branchwood Lane<br>Winter Park, FL 32792 |
| Martin L. Rosenfeld | | | M | | 06/01/1999 | 3018 164th Place No.<br>Clearwater, FL 33760 |
| Christopher ("Chris") B. Rowe | | | M | | 05/25/2000 | 11138 Pondview Dr.. Apt. C<br>Orlando, FL 32825 |
| Doreen M. Schwerdt | | | F | | 04/28/2000 | 2521 Grassy Point Dr. #111<br>Lake Mary, FL 32746 |
| Ramona ("Mona") Simpson | | | F | | 05/25/2000 | 651 Tam Court<br>Winter Springs, FL 32708 |
| Stephen A. Spence | | | M | | 05/25/2000 | 4808 Lake Ridge Rd.<br>Orlando, FL 32808 |
| Robert D. Sullivan | | | M | | 05/25/2000 | 657 Cheltenham Ave.<br>Deltona, FL 32738 |

2

**EXHIBIT  5**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Miami District Office**

One Biscayne Tower
2 South Biscayne Blvd, Suite 2700
Miami FL, 33131
(305) 536-4491
TTY (305) 536-5721
FAX (305) 536-4011

April 29, 2002

**VIA FACSIMILE AND U.S. MAIL**

Caran Rothchild, Esq.
GREENBERG, TRAURIG, PA
515 East Las Olas Boulevard
Suite 1500
Fort Lauderdale, Florida 33301

Re:   EEOC v. Daewoo Motor America, Inc., d/b/a Daewoo of Seminole, LLC
Civil Case No.: 6:01-CV-879-Orl-28-KRS

Dear Caran:

I received your letter dated April 11, 2002 and I will work with Plaintiff-Intervenor's counsel to provide you with some dates in order to work out a mutually convenient date to complete Ms. Brockman's deposition and schedule Mr. Dupont's deposition to the extent possible.

Notwithstanding, we believe there are some documents in your possession which are responsive to our documents request, but have not been disclosed.   We would like to resolve this and other discovery issues prior to the depositions of Mr. Dupont, Mr. Nichols, and Ms. Schwerdt.

Per Local Rule 3.01 (g), this letter will serve as the Commission's good faith effort to resolve certain discovery issues related to the Defendant's Responses and Objections to Plaintiff's Request for Production, Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories, as well as Defendant's Initial Disclosures.

First, in reference to Defendant's Responses and Objections to Plaintiff's Request for Production of Documents. I have the following concerns regarding information being withheld from the Commission:

**Request For Production #1 .**

Please provide any and all documents within your possession, custody or control which are or have been maintained with respect to the following individuals, including, but not limited to, personnel files, personnel action notices, notes kept by their supervisor(s), disciplinary documents and/or commendations:

a. Rebecca Brockman                 g. Don Fyock
b. James "Jim" Broman               h. Kemul Maldonado
c. Matt Conner                      i. William Nichols
d. William "Bill" Dupont            j. Cheryl Pope
e. Mitch Fazio                      k. Doreen Schwerdt
f. Nels Ferre

<u>EEOC's Position:</u>

The Commission asked for this information for eleven employees and was provided with the information on only four (Brockman, Broman, Fazzio, and Ferre). The Commission's position is that it will remove Mr. Conners from the list; however, the remaining six employees for which the information was requested have either been implicated as either harrassers, witnesses, or possible victims. As such, the documents requested on the remaining six employees are relevant to the claims and defenses in this action.

**Request For Production #2**

 Please provide copies of any and all of your employment policies, including, but not limited to, employee handbooks, disciplinary policies and EEO policies in existence at any time during Rebecca Brockman's employment with the Defendant, regardless of whether such policy was ever used, implemented or made known to any of the Defendant's employees.

<u>EEOC's Position:</u>

EEOC requested copies of any and all of Defendant's employment policies, including, but not limited to, employee handbooks, disciplinary policies and EEO policies in existence at any time during Rebecca Brockman's employment with the Defendant, regardless of whether such policy was ever used, implemented or made known to any of the Defendant's employees. EEOC would like to clarify that it is the Defendant's position that no other employment policies, including, but not limited to, disciplinary policies and EEO policies, were ever used, revised or implemented other than those provided in the Daewoo Employee Handbook.

**Request For Production #3**

Provide the Defendant Corporation's annual reports and audited financial statements reflecting Defendant's revenues, assets, and net worth from 1998 to present.

<u>EEOC's Position:</u>

The documents requested are clearly within the permissible scope of discovery and will provide the EEOC with relevant information. EEOC's request for financial documents directly relates to the claim of punitive damages in that it will provide a clear understanding of Defendant's financial condition to the jury.

**Request For Production #4**

Please provide copies of any and all documents relating to each and every complaint of sexual harassment made against Mitch Fazzio, Jim Broman, Nels Ferre, and any other current or former employee of Defendant who worked at Defendant's Sanford work-site from September 1998 through present, including, but not limited to, written complaints, witness statements and all documents relating to any investigation of such complaints.

EEOC's Position:

EEOC, pursuant to statutory authority, is seeking relief for Ms. Brockman and *similarly situated individuals* subjected to the harassment at issue in this case. Clearly, information regarding potential witnesses and/or victims in this case, is relevant, material and reasonably calculated to lead to the discovery of admissible evidence. Also, EEOC has not received any documents related to the internal investigation conducted by Ms. Jeanine Tesoro or the investigation conducted by Ms. Rothchild and Mr. Latimer.

**Request For Production #5**

Please provide copies of any and all of Defendants' internal communications relating to any fact or matter alleged in EEOC's Complaint including, but not limited to, internal memoranda, correspondence, messages and notes.

EEOC's Position:

The EEOC is under the impression that two separate investigations were conducted by the Defendant regarding the harassment at issue in this case. Human Resources Director Jeaninie Tesoro initially conducted an internal investigation into the sexual harassment complaints made by Plaintiff Intervenor Brockman and soon after an investigation was conducted by Ms. Rothchild and Mr. Latimer. The results of the internal investigations by Ms. Tesoro were never disclosed, nor was any documentation relating to the investigation provided. The results from Ms. Rothchild's and Mr. Latimer's investigation were disclosed; however, no documentation was provided showing the basis for their findings. The documents are clearly relevant to the EEOC's claims in this case as they relate to Defendant's response, if any, to complaints regarding the harassment at issue. Moreover, if the Defendant intends to rely on these investigations as part of its defense to avoid liability, the EEOC is entitled to the documents from those investigations and privilege does not apply. In addition the documents will lead to information regarding witnesses, and/or other victims entitled to relief.

In reference to Defendant's Answers and Objections to Plaintiff's First Set Of Interrogatories. I have the following concerns regarding information being withheld from the Commission:

**Interrogatory Numbered 1-3**

Identify any and all documents and recorded materials (including, not but limited to, transcripts, tapes, videos, personnel records and files, notes, memoranda, letters to or from supervisors, supervisors' notes, documents regarding separation and/or termination from employment, disciplinary files and/or any other employment information contained in a file of any type, etc.) pertaining or relating in any way to any interviews and/or investigation into any sexual harassment or constructive discharge allegations by Rebecca Brockman, against Defendant.

<u>EEOC's Position:</u>

See EEOC's position with respect to Request for Information #5

**Interrogatory Numbered 1-4**

Identify any and all documents and recorded materials (including, not but limited to, transcripts, tapes, videos, personnel records and files, notes, memoranda, letters to or from supervisors, supervisors' notes, documents regarding separation and/or termination from employment, disciplinary files and/or any other employment information contained in a file of any type, etc.) pertaining or relating in any way to any interviews and/or investigation into any complaints regarding sexual harassment, verbal or written, against Defendant by any current or former employee at Defendant's Sanford work-site.

<u>EEOC's Position:</u>

See EEOC's position with respect to Request for Information #5
In further effort to resolve this matter, the EEOC is willing to narrow this request to the time period of Rebecca Brockman's employment at Defendant's Sanford work-site.

**Interrogatory Numbered 1-5**

Please provide the name, gender, last known address and telephone number, and social security number of all individuals who were employed by you at Daewoo of Seminole, 4165 N. U.S. Highway 17-92, Sanford, FL 32773, during Mitch Fazzio's, Jim Broman's, and Nels Ferre's employment at that location. State whether or not each individual is currently employed by Daewoo of America, Inc., in any capacity.

<u>EEOC's Position:</u>

Based on information in our file, at least two employees were not included in your list of individuals employed at Daewoo of Seminole, 4165 N. U.S. Highway 17-92, Sanford, FL 32773, during Mitch Fazzio's, Jim Broman's, and Nels Ferre's employment at that location. Please provide a complete and exhaustive list of all individuals who were employed by you at Daewoo of Seminole, 4165 N. U.S. Highway 17-92, Sanford, FL 32773, during Mitch Fazzio's, Jim Broman's, and Nels Ferre's employment at that location. State whether or not

4

each individual is currently employed by Daewoo of America, Inc., in any capacity.

In reference to Defendant's Initial Disclosures, the EEOC still has not been provided a copy of Daewoo's insurance policy #860-08-32, with National Union Fire Insurance of Pittsburgh, PA.

Finally, to date the Commission has not received a log of documents that the Defendant is withholding pursuant to privilege, if any, as required by the Federal Rules.

If you would like to discuss any of these issues please do not hesitate to contact me at my direct line, (305) 530-6007. The Commission remains open to discussing these matters in an attempt to reach an agreement without court intervention. If I do not receive a response by May 10, 2002, I will assume Defendant is unwilling to effect informal resolution and will seek court intervention.

Sincerely,

John C. Weaver
Trial Attorney

cc:     Andrew Wedmore, Esq.
        Jill S. Schwartz & Associates, P.A.
        180 Park Avenue North
        Suite 200
        Winter Park, FL 32789

5

# EXHIBIT  6



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Miami District Office**

One Biscayne Tower
2 South Biscayne Blvd, Suite 2700
Miami FL, 33131
(305) 536-4491
TTY (305) 536-5721
FAX (305) 536-4011

October 3, 2002

**VIA FACSIMILE AND U.S. MAIL**

Caran Rothchild, Esq.
GREENBERG, TRAURIG, PA
515 East Las Olas Boulevard
Suite 1500
Fort Lauderdale, Florida 33301

Re:   EEOC v. Daewoo Motor America, Inc., d/b/a Daewoo of Seminole. LLC
      Civil Case No.: 6:01-CV-879-Orl-28-KRS

Dear Caran:

      As you know, the Court has issued a new Scheduling Order in the above referenced case. Pursuant to that Order the discovery deadline is now fast approaching. As time is of the essence, I have scheduled depositions for October 29, and 30, 2002. The notices for depositions of Mr. Fyock and Mr. Dupont are attached. Also, I will be noticing several more depositions in the coming weeks. If the dates mentioned above are not convenient, please contact me as soon as possible with alternative times that you will be available for both the months of October and November.

      Additionally, I am enclosing a copy of correspondence dated April 29, 2002, where I addressed several discovery issues concerning documents that have not been provided. The Commission remains open to discussing these matters in an attempt to reach an agreement without court intervention. However, based on time restraints, if I do not receive a response by October 9, 2002, I will assume Defendant is unwilling to effect informal resolution and will seek court intervention.

      Thank you for your attention to the foregoing.

                              Sincerely,

                              John C. Weaver
                              Trial Attorney

cc:     Andrew Wedmore, Esq.
        Jill S. Schwartz & Associates, P.A.
        180 Park Avenue North
        Suite 200
        Winter Park, FL 32789



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Miami District Office**

One Biscayne Tower
2 South Biscayne Blvd, Suite 2700
Miami FL, 33131
(305) 536-4491
TTY (305) 536-5721
FAX (305) 536-4011

November 8, 2002

**VIA FACSIMILE AND U.S. MAIL**

Caran Rothchild, Esq.
GREENBERG, TRAURIG, PA
515 East Las Olas Boulevard
Suite 1500
Fort Lauderdale, Florida 33301

Re:    EEOC v. Daewoo Motor America, Inc., d/b/a Daewoo of Seminole, LLC
        Civil Case No.: 6:01-CV-879-Orl-28-KRS

Dear Caran:

    In the event that the Court denies our extension, I have enclosed Notice of Depositions for
Jeanine Tesoro and Nels J. Ferre.  Upon receipt of the extension from the Court, I am willing to
reschedule these depositions to more convenient dates.

    Please call me if you have any questions, (305) 530-6007.

Sincerely,

John C. Weaver
Trial Attorney

cc:    Andrew Wedmore, Esq.
        Jill S. Schwartz & Associates, P.A.
        180 Park Avenue North
        Suite 200
        Winter Park, FL 32789

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES EQUAL EMPLOYMENT          )
OPPORTUNITY COMMISSION,                 )
                                        )
                    Plaintiff,          )          CIVIL ACTION NO.
                                        )          6:01-cv-879-Orl-28 KRS
and                                     )
                                        )
REBECCA BROCKMAN (ANACLETO)             )
                                        )
                Plaintiff/Intervenor,   )
                                        )
            v.                          )
                                        )
DAEWOO MOTOR AMERICA, INC.,             )
d/b/a DAEWOO OF SEMINOLE,               )
                                        )
                    Defendant.          )
_____)

## NOTICE OF TAKING DEPOSITION DUCES TECUM

TO:    Andrew G. Wedmore, Esq.
       JILL S. SCHWARTZ & ASSOCIATES, P.A.
       180 Park Avenue
       Suite 200
       Winter Park, FL 32789-7401

       Caran Rothchild, Esq.
       GREENBERG, TRAURIG, PA
       515 East Las Olas Boulevard
       Suite 1500
       Fort Lauderdale, Florida 33301

       Nels J. Ferre
       334 Pine Shadow Lane
       Lake Mary, FL 32746

       Please take notice that, pursuant to the Federal Rules of Civil Procedure, Plaintiff will

take the deposition of **Nels J. Ferre** at **9:30 a.m. on Wednesday, November 20, 2002**, before

an officer authorized by law to administer oaths and otherwise duly qualified to take depositions.

The deposition will be conducted at the office of Barbara Perry & Company,  Court Reporter,

201 N. Palmetto Avenue, Orlando, FL  32801 (Tel. 407-422-2953).  The deposition will be taken

for discovery purposes pursuant to the Federal Rules of Civil Procedure.

Respectfully submitted,

NICHOLAS M. INZEO
Acting Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

DELNER FRANKLIN-THOMAS
Regional Attorney

MICHAEL FARRELL
Supervisory Trial Attorney

JOHN C. WEAVER
Trial Attorney
Colorado Bar No. 030333

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Miami District Office
One Biscayne Tower, Suite 2700
Two South Biscayne Boulevard
Miami, FL  33131-1805
Tel.: (305) 530-6007 or (305) 530-6001
Fax: (305) 536-4494

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 8th

day of November, 2002, by U.S. Mail and Facsimile to the following:


Andrew G. Wedmore, Esq.
JILL S. SCHWARTZ & ASSOCIATES, P.A.
180 Park Avenue
Suite 200
Winter Park, FL 32789-7401
Telephone: (407) 647-8911
Facsimile: (407) 628-4994
Attorney for Plaintiff/Intervenor

Henry Latimer, Esq.
Caran Rothchild, Esq.
GREENBERG, TRAURIG, PA
515 East Las Olas Boulevard
Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 765-0500
Facsimile: (954) 765-1477
Attorneys for Defendant


John C. Weaver
Trial Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO.<br>6:01-cv-879-Orl-28 KRS |
| and | ) ) | |
| REBECCA BROCKMAN (ANACLETO) | ) ) | |
| Plaintiff/Intervenor, | ) ) | |
| v. | ) ) | |
| DAEWOO MOTOR AMERICA, INC.,<br>d/b/a DAEWOO OF SEMINOLE, | ) ) ) | |
| Defendant. | ) ) | |

## NOTICE OF TAKING DEPOSITION

TO:   Andrew G. Wedmore, Esq.
      JILL S. SCHWARTZ & ASSOCIATES, P.A.
      180 Park Avenue
      Suite 200
      Winter Park, FL 32789-7401

      Caran Rothchild, Esq.
      GREENBERG, TRAURIG, PA
      515 East Las Olas Boulevard
      Suite 1500
      Fort Lauderdale, Florida 33301

      Jeanine Tesoro, HR Director
      Daewoo Motor America, Inc.
      1055 West Victoria Street
      Compton, CA 90220

      Please take notice that, pursuant to the Federal Rules of Civil Procedure, Plaintiff will

take the deposition of **Jeanine Tesoro at 9:30 a.m. on Monday, November 18, 2002,** before an

officer authorized by law to administer oaths and otherwise duly qualified to take depositions.

The deposition will be conducted at the office of EEOC, Los Angeles District Office, 255 E.

Temple Street, 4th Floor, Los Angeles, CA 9012 (Tel. 213-894-1074). The deposition will be

taken for discovery purposes pursuant to the Federal Rules of Civil Procedure.

 

       Respectfully submitted,

       NICHOLAS M. INZEO
       Acting Deputy General Counsel

       GWENDOLYN YOUNG REAMS
       Associate General Counsel

       DELNER FRANKLIN-THOMAS
       Regional Attorney

       MICHAEL FARRELL
       Supervisory Trial Attorney

       JOHN C. WEAVER
       Trial Attorney
       Colorado Bar No. 030333

       EQUAL EMPLOYMENT OPPORTUNITY
       COMMISSION
       Miami District Office
       One Biscayne Tower, Suite 2700
       Two South Biscayne Boulevard
       Miami, FL   33131-1805
       Tel.: (305) 530-6007 or (305) 530-6001
       Fax: (305) 536-4494

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 8th

day of November, 2002, by U.S. Mail and Facsimile to the following:


Andrew G. Wedmore, Esq.
JILL S. SCHWARTZ & ASSOCIATES, P.A.
180 Park Avenue
Suite 200
Winter Park, FL 32789-7401
Telephone: (407) 647-8911
Facsimile:  (407) 628-4994
Attorney for Plaintiff/Intervenor

Henry Latimer, Esq.
Caran Rothchild, Esq.
GREENBERG, TRAURIG, PA
515 East Las Olas Boulevard
Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 765-0500
Facsimile: (954) 765-1477
Attorneys for Defendant


John C. Weaver
Trial Attorney

3

# EXHIBIT  7



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Miami District Office**

One Biscayne Tower
2 South Biscayne Blvd, Suite 2700
Miami FL, 33131
(305) 536-4491
TTY (305) 536-5721
FAX (305) 536-4011

January 31, 2003

**VIA FACSIMILE AND U.S. MAIL**

Caran Rothchild, Esq.
GREENBERG, TRAURIG, PA
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, Florida 33301

Re:     <u>EEOC v. Daewoo Motor America, Inc., d/b/a Daewoo of Seminole, LLC</u>
        Civil Case No.: 6:01-CV-879-Orl-28-KRS

Dear Caran:

As you know, the Court has issued an Amended Case Management Schedule with a discovery deadline of May 16, 2003. The Commission has attempted several times to address discovery issues concerning documents in your possession which are responsive to our documents request, but have not been disclosed. The Commission remains open to discussing these matters in an attempt to reach an agreement without court intervention. However, based on time constraints, if I do not receive a response by February 5, 2003, I will assume Defendant is unwilling to effect informal resolution and will seek court intervention.

Per Local Rule 3.01 (g), this letter will serve as the Commission's good faith effort to resolve certain discovery issues related to the Defendant's Responses and Objections to Plaintiff's Request for Production, Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories, as well as Defendant's Initial Disclosures.

First, in reference to Defendant's Responses and Objections to Plaintiff's Request for Production of Documents. I have the following concerns regarding information being withheld from the Commission:

**Request For Production #1**

Please provide any and all documents within your possession, custody or control which are or have been maintained with respect to the following individuals, including, but not limited to, personnel files, personnel action notices, notes kept by their supervisor(s), disciplinary documents and/or commendations:

a.  Rebecca Brockman
b.  James "Jim" Broman
c.  Matt Conner
d.  William "Bill" Dupont
e.  Mitch Fazio
f.  Nels Ferre
g.  Don Fyock
h.  Kemul Maldonado
i.  William Nichols
j.  Cheryl Pope
k.  Doreen Schwerdt

EEOC's Position:

The Commission asked for this information for eleven employees and was provided with the information on only four (Brockman, Broman, Fazzio, and Ferre). The Commission's position is that it will remove Mr. Conners from the list; however, the remaining six employees for which the information was requested have either been implicated as either harrassers, witnesses, or possible victims. As such, the documents requested on the remaining six employees are relevant to the claims and defenses in this action.

**Request For Production #2**

Please provide copies of any and all of your employment policies, including, but not limited to, employee handbooks, disciplinary policies and EEO policies in existence at any time during Rebecca Brockman's employment with the Defendant, regardless of whether such policy was ever used, implemented or made known to any of the Defendant's employees.

EEOC's Position:

EEOC requested copies of any and all of Defendant's employment policies, including, but not limited to, employee handbooks, disciplinary policies and EEO policies in existence at any time during Rebecca Brockman's employment with the Defendant, regardless of whether such policy was ever used, implemented or made known to any of the Defendant's employees. EEOC would like to clarify that it is the Defendant's position that no other employment policies, including, but not limited to, disciplinary policies and EEO policies, were ever used, revised or implemented other than those provided in the Daewoo Employee Handbook.

**Request For Production #3**

Provide the Defendant Corporation's annual reports and audited financial statements reflecting Defendant's revenues, assets, and net worth from 1998 to present.

EEOC's Position:

The documents requested are clearly within the permissible scope of discovery and will provide the EEOC with relevant information. EEOC's request for financial documents directly relates to the claim of punitive damages in that it will provide a clear understanding of Defendant's financial condition to the jury.

2

**Request For Production #4**

Please provide copies of any and all documents relating to each and every complaint of sexual harassment made against Mitch Fazzio, Jim Broman, Nels Ferre, and any other current or former employee of Defendant who worked at Defendant's Sanford work-site from September 1998 through present, including, but not limited to, written complaints, witness statements and all documents relating to any investigation of such complaints.

<u>EEOC's Position:</u>

EEOC, pursuant to statutory authority, is seeking relief for Ms. Brockman and *similarly situated individuals* subjected to the harassment at issue in this case.   Clearly, information regarding potential witnesses and/or victims in this case, is relevant, material and reasonably calculated to lead to the discovery of admissible evidence. Also, EEOC has not received any documents related to the internal investigation conducted by Ms. Jeanine Tesoro or the investigation conducted by Ms. Rothchild and Mr. Latimer.

**Request For Production #5**

Please provide copies of any and all of Defendants' internal communications relating to any fact or matter alleged in EEOC's Complaint including, but not limited to, internal memoranda, correspondence, messages and notes.

<u>EEOC's Position:</u>

The EEOC is under the impression that two separate investigations were conducted by the Defendant regarding the harassment at issue in this case.   Human Resources Director Jeaninie Tesoro initially conducted an internal investigation into the sexual harassment complaints made by Plaintiff Intervenor Brockman and soon after an investigation was conducted by Ms. Rothchild and Mr. Latimer. The results of the internal investigations by Ms. Tesoro were never disclosed, nor was any documentation relating to the investigation provided. The results from Ms. Rothchild's and Mr. Latimer's investigation were disclosed; however, no documentation was provided showing the basis for their findings. The documents are clearly relevant to the EEOC's claims in this case as they relate to Defendant's response, if any, to complaints regarding the harassment at issue. Moreover, if the Defendant intends to rely on these investigations as part of its defense to avoid liability, the EEOC is entitled to the documents from those investigations and privilege does not apply. In addition the documents will lead to information regarding witnesses, and/or other victims entitled to relief.

In reference to Defendant's Answers and Objections to Plaintiff's First Set Of Interrogatories.  I have the following concerns regarding information being withheld from the Commission:

3

**Interrogatory Numbered 1-3**

Identify any and all documents and recorded materials (including, not but limited to, transcripts, tapes, videos, personnel records and files, notes, memoranda, letters to or from supervisors, supervisors' notes, documents regarding separation and/or termination from employment, disciplinary files and/or any other employment information contained in a file of any type, etc.) pertaining or relating in any way to any interviews and/or investigation into any sexual harassment or constructive discharge allegations by Rebecca Brockman, against Defendant.

EEOC's Position:

See EEOC's position with respect to Request for Information #5

**Interrogatory Numbered 1-4**

Identify any and all documents and recorded materials (including, not but limited to, transcripts, tapes, videos, personnel records and files, notes, memoranda, letters to or from supervisors, supervisors' notes, documents regarding separation and/or termination from employment, disciplinary files and/or any other employment information contained in a file of any type, etc.) pertaining or relating in any way to any interviews and/or investigation into any complaints regarding sexual harassment, verbal or written, against Defendant by any current or former employee at Defendant's Sanford work-site.

EEOC's Position:

See EEOC's position with respect to Request for Information #5
In further effort to resolve this matter, the EEOC is willing to narrow this request to the time period of Rebecca Brockman's employment at Defendant's Sanford work-site.

**Interrogatory Numbered 1-5**

Please provide the name, gender, last known address and telephone number, and social security number of all individuals who were employed by you at Daewoo of Seminole, 4165 N. U.S. Highway 17-92, Sanford, FL 32773, during Mitch Fazzio's, Jim Broman's, and Nels Ferre's employment at that location. State whether or not each individual is currently employed by Daewoo of America, Inc., in any capacity.

EEOC's Position:

Based on information in our file, at least two employees were not included in your list of individuals employed at Daewoo of Seminole, 4165 N. U.S. Highway 17-92, Sanford, FL 32773, during Mitch Fazzio's, Jim Broman's, and Nels Ferre's employment at that location. Please provide a complete and exhaustive list of all individuals who were employed by you at Daewoo of Seminole, 4165 N. U.S. Highway 17-92, Sanford, FL 32773, during Mitch Fazzio's, Jim Broman's, and Nels Ferre's employment at that location. State whether or not

4

each individual is currently employed by Daewoo of America, Inc., in any capacity.

In reference to Defendant's Initial Disclosures, the EEOC still has not been provided a copy of Daewoo's insurance policy #860-08-32, with National Union Fire Insurance of Pittsburgh, PA.

Finally, to date the Commission has not received a log of documents that the Defendant is withholding pursuant to privilege, if any, as required by the Federal Rules.

If you would like to discuss any of these issues please do not hesitate to contact me at my direct line, (305) 530-6007. Again, the Commission remains open to discussing these matters in an attempt to reach an agreement without court intervention. However, as time is of the essence, if I do not receive a response by February 5, 2003, I will assume Defendant is unwilling to effect informal resolution and will seek court intervention.


Sincerely,

John C. Weaver
Trial Attorney




cc:     Andrew Wedmore, Esq.
        Jill S. Schwartz & Associates, P.A.
        180 Park Avenue North
        Suite 200
        Winter Park, FL 32789

5

# EXHIBIT  8



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Miami District Office**

One Biscayne Tower
2 South Biscayne Blvd, Suite 2700
Miami FL, 33131
(305) 536-4491
TTY (305) 536-5721
FAX (305) 536-4011

February 25, 2003

<u>**VIA FACSIMILE AND U.S. MAIL**</u>
Caran Rothchild, Esq.
GREENBERG, TRAURIG, PA
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, Florida 33301

Re:   <u>EEOC v. Daewoo Motor America, Inc., d/b/a Daewoo of Seminole, LLC</u>
      Civil Case No.: 6:01-CV-879-Orl-28-KRS

Dear Caran:

     As you know, the EEOC has attempted for months to obtain complete responses to its discovery requests from the Defendant in this case. Most recently, EEOC sent a letter, dated January 31, 2003, again requesting that Defendant provide the requested information and documents. In your response, dated February 5, 2003, you represented that Defendant would produce: 1) personnel records; 2) annual reports and audited financial statements from 1998 to the present; 3) privilege logs for any documents responsive to EEOC's Request for Production 1-5 and Interrogatory 1-3 withheld by Defendant pursuant to any privilege; and 4) a copy of the insurance policy referenced in Defendant's initial disclosures.

     Based on these representations, EEOC did not file any motions to compel at that time and instead arranged to pick up the documents at your office on February 14, 2003. However, the only documents produced by the Defendant on February 14, 2003, were certain personnel records.

     Given the Defendant's consistent refusal to produce relevant information and documentation and the fast-approaching discovery deadline in this case, EEOC is now compelled to seek court intervention to obtain the requested documents.

     Should you wish to discuss these matters further please do not hesitate to contact me at my direct line, (305) 530-6007.

Sincerely,

John C. Weaver
Trial Attorney

cc:   Andrew Wedmore, Esq.

**EXHIBIT  9**



# GREENBERG

ATTORNEYS AT LAW

# TRAURIG

### Transmittal Cover Sheet

| | |
|---|---|
| **TO** | John C. Weaver, Esq. |
| **Company** | U.S. Equal Employment Opportunity Commission |
| **Fax Number** | B13055364011 |
| **Phone Number** | |
| **FROM** | Caran Rothchild |
| **Phone Number** | 954.760.0210 |
| **File Number** | 48478.010600 |
| **Comments** | Re: EEOC v. Daewoo |

Dear John:
In response to your inquiries regarding documents, I am still attempting to get the responsive documents from California. I will update you on the status by the end of the week.

Thank you for your attention to this matter.
Caran Rothchild

| | |
|---|---|
| **Date** | Tuesday, March 11, 2003 3:10:04 PM |
| **No. Pages** | Including this cover sheet     01 |

Please notify us immediately if not received properly at 954-765-0500.

The information contained in this transmission is attorney privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone collect and return the original message to us at the address below via the U.S. Postal Service. We will reimburse you for your postage. Thank you.

401 East Las Olas Blvd., Suite 2000 Ft. Lauderdale, Fla 33301 Tel (954)765-0500 Fax (954)765-1477

# EXHIBIT 10

2001 WL 293033
(Cite as: 2001 WL 293033 (N.D.Ill.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

PS PROMOTIONS, INC., a Michigan corporation, Plaintiff,
v.
Kenneth STERN, an individual, and Stern Hall, Inc., an Illinois corporation, Defendants.

No. 97 C 3742.

March 23, 2001.

*MEMORANDUM OPINION AND ORDER*

PALLMEYER, J.

*1 On March 8, 2000, this court entered summary judgment in favor of Defendants on Plaintiff's claims under the Lanham Act. Several months later, the case settled on appeal. Defendants now seek an award of attorneys' fees as a remedy for the conduct of Plaintiff and its attorneys, conduct Defendants call "oppressive and vexatious." As authority for such an award, Defendants invoke 15 U.S.C. § 1117(a), which permits an award of attorneys' fees to a prevailing party in a Lanham Act case, and 28 U.S.C. § 1927, which authorizes such an award against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." For the reasons set forth below, the motion is denied with respect to 15 U.S .C. § 1117 but granted under 28 U.S.C. § 1927.

*DISCUSSION*

The underlying dispute between the parties is described in this court's decision granting summary judgment. *See PS Promotions, Inc. v. Stern,* No. 97 C 3742, 2000 WL 283092 (N.D.Ill. Mar. 8, 2000). To summarize: Defendant Kenneth Stern was the Chief Operating Officer of PS Promotions, an events marketing business, until May 1992, when Stern was terminated by Paul Stanley, the owner and president of PS. Although it was Stanley himself who packed the contents of Stern's desk and

office into a box, Plaintiff claims that at the time of his departure, Stern took with him certain materials, including videotapes and documents, that contained trade secrets, and then improperly established a marketing firm in competition with PS Promotions.

Years later, Stanley became suspicious that Stern was passing off PS's work as his own. Stanley arranged for one of PS's own employees, Rick Sullivan, to pose as a potential client and meet with Stern. Stern did meet with Sullivan, gave him a promotional brochure, and showed him a videotape Stern had worked on during his days with PS Promotions. In subsequent contacts with this purported client, Stern provided marketing brochures and other promotional materials in which he described his experience, including references to work he had done for clients of PS Promotions. Plaintiff filed this lawsuit against Stern and his new business, Stern Hall, Inc., alleging that Stern's conduct constituted unlawful competition under a number of theories. The court was unpersuaded, however, by Plaintiff's Lanham Act theories of false designation of origin and false advertising. The court granted summary judgment on those claims and dismissed pendent state law claims without prejudice.

Defendants now seek an award under two theories: They argue, first, that the entire lawsuit was oppressive, justifying an award under § 1117 of the Lanham Act. In addition, they believe they are entitled to an award against Plaintiff's counsel for its conduct in "multipl[ying] the proceedings in [this] case unreasonably and vexatiously." The court addresses these arguments individually below.

I. Award under the Lanham Act: Was this Lawsuit "Exceptional"?

*2 Defendants believe Plaintiff's conduct in this litigation was oppressive and vexatious. In "exceptional cases," courts have discretion to award attorneys' fees to prevailing parties in cases brought under the Lanham Act. 15 U.S.C. § 1117(a). Although § 1117 is ordinarily invoked in cases where prevailing parties have proven infringement, "it may in exceptional circumstances, and when proven by clear and convincing evidence, 'provide protection against unfounded suits brought by trademark owners for harassment and the like." ' *Finance Inv. Co. (Bermuda) Ltd. v. Geberit AG,* 165 F.3d 526, 533 (7th Cir.1998) (quoting *Otis*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 293033
(Cite as: 2001 WL 293033 (N.D.Ill.))

Page 2

*Clapp & Son, Inc. v. Filmore Vitamin Co.,* 754 F.2d 738, 746 (7th Cir.1985).

In determining whether a case is "exceptional," a prevailing defendant must show that a lawsuit filed against it was "oppressive ." *Door Systems, Inc. v. Pro-Line Door Systems, Inc.,* 126 F.3d 1028, 1032 (7th Cir.1997); *see also S Industries, Inc. v. Ecolab, Inc.,* No. 96 C 4140, 1999 WL 162785 at *7 (N.D.Ill. Mar. 16, 1999) (the test is whether the lawsuit "so lacked merit and was so burdensome to defend against that it could be fairly described as oppressive."). A showing of bad faith is not required; instead, "a suit can be oppressive because of lack of merit and cost of defending even though the plaintiff honestly though mistakenly believes that he has a good case and is not trying merely to extract a settlement based on the suit's nuisance value." *Door Systems, Inc.,* 126 F.3d at 1032. Nevertheless, even if a case may be deemed "exceptional," the decision to award attorney's fees remains equitable in nature, calling upon the court to exercise its sound discretion. *See BASF Corp. v. Old World Trading Co.,* 41 F.3d 1081, 1099 (7th Cir.1994) ("A decision to award attorneys' fees under the Lanham Act is firmly committed to the district court's discretion"); *Dorr-Oliver Inc. v. Fluid Quip, Inc.,* 966 F.Supp. 718, 720 (N.D.Ill.1997) (same).

Defendants believe the standard for an award under § 1117 is met here. They urge that Plaintiff and its attorneys knew or should have known that their claims against Stern and his new company were unsupportable. Stanley, Plaintiff's principal, had little solid evidence of any wrongdoing on Stern's part prior to Sullivan's posing as a potential client and meeting with Stern. Even that meeting yielded very little tangible support for Plaintiff's claims.

As more fully detailed in this court's prior order, in response to Stern's motion for summary judgment, Stanley offered no evidence in support of his claim that Stern took confidential materials with him at the time of his termination in 1992. *PS Promotions,* 2000 WL 283092, at *3. Stanley claims he began hearing "rumors in the industry" of Stern's misconduct soon after Stern's departure but offered only a "vague reference to 'a woman' from Kraft whose name he [could] not recall" and his own sketchy memory concerning a Stern Hall marketing brochure that he glanced at while on a sales call. *Id.* Plaintiff focused on the marketing brochure, case

studies, and videotapes that Stern provided Sullivan in the staged client meeting; the court ultimately concluded that there was a dispute of fact concerning Stern's false designation of origin for Stern's own products, but that Plaintiff could not prove a likelihood of confusion arising from the activity. Notably, there was no evidence that Stanley actually lost business to Stern; that Stern intended to mislead clients; or even that Stern ever showed any of the materials in question to any actual or potential client. *Id.* at *9, 11.

*3 As Defendants further emphasize, the court itself expressed skepticism about Plaintiff's claims early on. At an October 8, 1998 status hearing, Judge Zagel commented, "Surely you [Plaintiff's attorneys] would not have filed this lawsuit unless you have some indication, in some specific case, that Mr. Stern has done this [alleged misconduct]." (Transcript of 10/8/98, Ex. C to Defendants' Supplemental Appendix, at 7:15-17.) After the case was reassigned, this court commented on the gap between Mr. Stern's departure from PS Promotions and the filing of this lawsuit, suggesting that any serious wrongdoing on Stern's part could be expected to have come to light earlier. (Transcript of 12/18/98, Ex. D to Defendants' Supplemental Appendix, at 21:9- 12.) Later, at a status conference, this court observed that the circumstances of the Sullivan contact did not "strike me as on their face a demonstration that Mr. Stern has engaged in unlawful conduct." (Transcript of 4/13/99, Ex. 46 to Defendants' Appendix at 22:11-15.)

On summary judgment, the court concluded that Stern's contacts with Sullivan did not violate the Lanham Act. The court found nothing improper about Stern's presentation to Sullivan of videotapes that he had worked on while employed by PS Promotions. *PS Promotions,* 2000 WL 283092, at *7. Nor did Stern's presentation of case studies describing his work at PS constitute a "false designation of origin." *Id.* Finally, although there was a dispute of fact concerning Stern's listing of PS clients in Stern Hall's brochures, the court found no evidence of a likelihood of confusion from such listing. *Id.* at * 12.

These circumstances are indeed troublesome. It appears to the court that PS Promotions filed this action with little evidentiary support and continued to pursue it even after discovery yielded little

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

additional evidence. [FN1] The court is, nevertheless, reluctant to award attorneys' fees on this basis. As the Seventh Circuit has observed, this court's rejection of Plaintiff's arguments does not mean that those arguments constituted an "abuse of process." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.,* 132 F.3d 36 (Table, Text in WESTLAW), No. 97-2706, 1997 WL 800872, at *2 (7th Cir.1997). Nor is the fact that Plaintiff pleaded a Lanham Act violation "on information and belief" by itself improper, as Defendants suggest. (Defendants' Memorandum of Law in Support of Motion for Award of Attorneys' Fees (hereinafter, "Defs.' Memo"), at 3 n. 5.) *See Mitsubishi Elec. Corp. v. IMF Tech., Inc.,* 44 U.S .P.Q.2d 1904, No. 96 C 499, 1997 WL 630187, at *11-12 (N.D.Ill. Sept. 30, 1997); *cf. Zenith Electronics Corp. v. Exzek, Inc.,* No. 93 C 5041, 1997 WL 798907, at * 13 (N.D.Ill.Dec. 27, 1997).

> FN1. Even that limited evidence could have and should have been ferreted out much earlier. This case was filed on May 21, 1997, and Defendants filed their answer 21 days later. So far as the court's docket reflects, Plaintiff took no action at all to move the case forward for at least a year, did not serve its first set of interrogatories until May 29, 1998, and, as of October 8, 1998, had not noticed a single deposition. (Docket sheet, Ex. 2 to Defendants' Appendix; Plaintiff's First Set of Interrogatories, Ex. 4 to Defendants' Appendix; Transcript of 10/8/98, Ex. 2 to Defendants' Supplemental Appendix.) Plaintiff did serve a document request in July 1997, but, although apparently dissatisfied by the response, did not file a motion to compel until September 30 of the following year. (Plaintiff's First Request for Production, Ex. 5 to Defendants' Appendix; Docket sheet, Ex. 2.)

Other cases in which fees have been awarded pursuant to § 1117 involved more egregious circumstances. For example, in *S Industries, Inc. v. Centra 2000, Inc.,* No. 96 C 3524, 1998 WL 395161, at *1, 2 (N.D.Ill. July 9, 1998), plaintiff had alleged that defendants violated § 32 of the Lanham Act by using their registered trademark, although plaintiff had never obtained a federal registration for use of its mark on computer software. Further, when defendants moved for summary judgment, plaintiff failed to file the statement of disputed fact in accordance with this court's local rules. *Id.* at *2. Other judges of this court have granted § 1117 sanctions against the same plaintiff in other lawsuits, for similar reasons. *See S Industries, Inc v. Ecolab, Inc.,* No. 96 C 4140, 1999 WL 162785, at *8 (N.D.Ill. Mar. 16, 1999) (plaintiff's claim that its "pest elimination products" were related to the products for which it had a registered mark was "fanciful"); *S Industries Inc. v. Diamond Multimedia Systems, Inc.,* 17 F.Supp.2d 775, 776 (N.D.Ill.1998) (plaintiff's unfair competition claims "were not grounded on a plausible theory of ownership, let alone one even remotely supported by the law or the scant evidence presented"). Similarly, in *Finance Inv. Co. (Bermuda) Ltd. v. Geberit AG,* 165 F.3d 526, 530 (7th Cir.1998), the Seventh Circuit affirmed an award of fees under a number of theories, including § 1117, where the court found plaintiffs had filed a Lanham Act case despite the fact that they did not have a protectable interest in the trademark at issue and knew, based upon defendant's statements and the outcome of a previous lawsuit, that defendants had nothing to do with the alleged improper use of the mark.

*4 In contrast, Plaintiff PS Promotions' pursuit of this lawsuit, while arguably disappointing, does not present the oppressive or exceptional circumstances in which § 1117 fees have been awarded. To the extent that this case may fairly be characterized as oppressive or exceptional, this court exercises its discretion to deny the request for fees for the entire case under this section in light of the determination that a more limited award is appropriate, as addressed below.

II. Award under 28 U.S.C. § 1927

In addition to their argument for an award of attorneys' fees under § 1117, Defendants argue that an award against counsel is warranted under 28 U.S.C. § 1927. That statute permits an award of fees against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." The court has discretion to enter such an award when the attorney has acted in an "objectively unreasonable manner" by engaging in a "serious and studied disregard for the orderly process of justice," or where the claim lacks a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 293033
(Cite as: 2001 WL 293033 (N.D.Ill.))

"plausible legal or factual basis." *Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 119 (7th Cir.1994). Vexatious conduct involves either subjective or objective bad faith. *Id.* (citing *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184 (7th Cir.1992)). Objective bad faith is met by "extremely negligent conduct, like reckless and indifferent conduct." *Id.* at 120 (citing *Kotsilieris,* 966 F.2d at 1185). In sum, an attorney's actions must generally be "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986).

Sanctions under § 1927 may well be appropriate for counsel's conduct in the course of discovery *See generally Castillo v. St. Paul Fire and Marine Ins. Co.,* 938 F.2d 776, 780-81 (7th Cir.1991) (affirming sanctions imposed under § 1927 for discovery abuse); *Perkins v. General Motors Corp.,* 129 F.R.D. 655, 663-64, 666 (W.D.Mo.1990), *aff'd,* 965 F.2d 597, 600-02 (8th Cir.1992) (imposing sanctions under § 1927 and Rule 26(g) where plaintiff's counsel intentionally withheld name of crucial witness and signed discovery responses which were incomplete and inaccurate). The court is aware that discovery is often contentious and that misunderstandings and miscommunication are not unusual. In this case, unfortunately, the court concludes that the conduct of Plaintiff's attorneys exceeded the bounds of enthusiastic advocacy in two significant areas.

A. Failure to Disclose Information Concerning Rick Sullivan

Rick Sullivan was an employee of PS Promotions who met with Defendant Stern, posing as a potential client of Stern Hall's business. In Plaintiff's own view, the information and materials that Stern disclosed to Mr. Sullivan were the central evidence of Stern's misconduct. Yet Plaintiff's counsel did everything within their power to keep Sullivan's identity and relationship to PS Promotions a secret from Defendants. Counsel's explanation for this conduct is wholly unsatisfying, as explained below.

**\*5** As noted earlier, Kenneth Stern left his position with PS Promotions in 1992. Years later, PS instructed one of its own employees, Rick Sullivan, to meet with Stern in what Defendants refer to as "an undercover entrapment attempt." (Defs.' Memo, at 3 .) It is undisputed that Plaintiff's goal in setting

up this meeting was to determine what representations Mr. Stern was making concerning his own marketing business and to collect from Stern any materials that would constitute evidence that Stern was improperly holding out work prepared by PS as that of his own firm. As Plaintiff points out, courts recognize that there are circumstances in both civil and criminal litigation in which "undercover" investigations are necessary in order to expose improper conduct. (Memorandum of Law of PS Promotions, Inc. in Opposition to Defendants' Motion for Award of Attorneys' Fees (hereinafter, "PS Memo"), at 8.) The court's concern in this case, however, is not the fact that PS conducted an investigation, but that once the results of the investigation became the basis for this lawsuit, Plaintiff unreasonably refused to disclose information concerning Mr. Sullivan's identity, as described below.

1. Sullivan's Identity

At the time of his meeting with Stern, Sullivan introduced himself as the head of a marketing company called "Sullivan Communications, Inc." Plaintiff points out that Sullivan Communications was in fact incorporated in February 1991 and contends that the company existed at the time of the March 27, 1997 meeting with Stern. The record on this point is equivocal: According to records of the Illinois Secretary of State's Office, Sullivan Communications, Inc. was dissolved "as of" July 1, 1997. (Secretary of State Records, Ex. 3 to Plaintiff's Appendix.) Sullivan himself testified that he operated the company from "February of '91 to September--I don't remember the exact ending date. It was around September of '97 or '96." (Sullivan Deposition, Ex. to Defendants' Supplemental Appendix, at 30:9-11.) There is no dispute, however, that at the time of Sullivan's meeting with Stern, he was employed by PS Promotions, but that he did not reveal that identity to Stern.

After Plaintiff filed this lawsuit, Stern's attorneys came to suspect that PS was involved in the Sullivan-Stern meeting. In June 1998, they served PS with an interrogatory seeking "the name, address and telephone number" of the person who met with Stern the previous spring. (Defendants' First Set of Interrogatories to Plaintiff, Attachment A to Defendants' Motion to Dismiss, Ex. 8 to Defendants' Appendix.) When PS answered this interrogatory on September 1, 1998, it provided

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 293033
(Cite as: 2001 WL 293033 (N.D.Ill.))

Page 5

only the name Rick Sullivan. Plaintiff's failure to provide the requested information was improper, and Plaintiff's explanation for this failure is unsatisfying Plaintiff suggests that it had no obligation to furnish Sullivan's address because "Stern had correspondence from Sullivan that revealed Sullivan's home and business address even before the suit began." (PS Memo, at 8.) The documents PS cites for this proposition include only a faxed memo to Stern from Sullivan Communications--a memo that would appear to reveal Sullivan's *business* address, and Sullivan's testimony at his 1999 deposition that his business address was the same as his home. (Sullivan Memo, Ex. 4 to Plaintiff's Appendix; Sullivan Dep., Ex. 5 to Plaintiff's Appendix, at 5:23-24.) In any event, as Defendants point out, PS was responsible to answer the interrogatory regardless of what information Stern may or may not have had. (Defs.' Memo at 6 .)

*6 Still uncertain of Sullivan's relationship to PS, on September 10, 1998, Defendants served PS with a notice for Sullivan's deposition. (Notice of Deposition, Ex. 11 to Defendants' Appendix.) On October 12, 16, and 21, Defendants' counsel sent letters to attorneys for PS, seeking a mutually convenient date for the deposition. Plaintiff's attorneys made no response to any of these letters and have offered no explanation for failing to respond. To explain their refusal to produce Sullivan voluntarily for his deposition, Plaintiff's counsel observe that "since Sullivan was not a principal of PS, PS had no duty to produce him." (PS Memo, at 9.) Yet despite their apparent view that Defendants would have to subpoena Mr. Sullivan, a PS employee, counsel still failed to provide his home address. Ultimately, on November 2, 1998, Defendants issued a subpoena to Sullivan at what they believed to be the address of Sullivan Communications, Inc. (Subpoena, Ex. 15 to Defendants' Appendix) and issued a check to him for $40.00. In letters dated November 3, 4, 5, and 6, Plaintiff's counsel objected to proceeding with that deposition, in part based upon their insistence that Mr. Stern's deposition should take place first. (Letter of 11/3/98 [Ex. K to Defendants' Motion to Dismiss], Ex. 25 to Defendants' Appendix; Letter of 11/4/98, Ex. 17 to Defendants' Appendix; Letter of 11/5/98 [Ex. L to Defendants' Motion to Dismiss], Ex. 25 to Defendants' Appendix; Letter of 11/6/98, Ex. 19 to Defendants' Appendix.)

This refusal was improper. The Federal Rules make

plain that there is no "order" to discovery: "[M]ethods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay any other party's discovery." Fed. R. Civ. P. 26(d). Plaintiff insisted that Judge Zagel ordered that the Stern deposition proceed first, but the context defeats that notion: it was Defendants' attorneys who suggested at a conference with Judge Zagel that Plaintiff's claims lacked merit and that discovery would reveal this. At the October 8, 1998 status conference, Judge Zagel pointed out, with respect to his own concerns about the claims against Stern, "It would be helpful to me if you had deposed Stern and we saw what Stern had to say.... [I]t seems to me that we are dead in the water until you depose Stern,....You can do Stern in the next three weeks maybe?" (Transcript of 10/8/98, Ex. C to Defendants' Supplemental Appendix.) judge Zagel's comments, made nearly 18 months after Plaintiff filed this lawsuit, must be understood as an expression of his own concern that discovery be commenced promptly, not as a direction that Plaintiff hold back its own witnesses until Plaintiff's counsel had gotten around to deposing the principal Defendant. [FN2]

FN2. Plaintiff's apparent misconception that its own discovery ought not proceed before Defendants', as well as the early slow pace in this case, are perhaps responsible for another of the disputes in this litigation. On November 10, 1998, almost eighteen months after PS filed this lawsuit, this court entered an order setting a discovery close date of February 15, 1999. (Docket Sheet, Ex. 2 to Defendants' Appendix, No. 20.) On February 11, 1999, the court extended discovery to March 15. (*Id.* No. 30.) As of March 11, 1999, both parties had served additional discovery requests, and the court ordered that both parties furnish responses as quickly as possible. (*Id.* No. 33.) A week later, the court ordered Defendants to provide additional documents but otherwise denied Plaintiff's request for a further discovery extension. (*Id.* No. 35.) Despite the fact that discovery was open to both sides for more than a year and a half, and that the court had set a discovery close date months earlier, Plaintiff's counsel complained on

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 293033
(Cite as: 2001 WL 293033 (N.D.Ill.))

March 26, 1999 that on March 11 the court had given him exactly four days' notice of the discovery deadline. (Transcript of 3/26/99, Ex. 40 to Defendants' Appendix, at 4:8- 15.) The court expressed regret concerning Plaintiff's counsel's misunderstanding (*Id.* at 9:13-22) but now believes, on review of the record, that Plaintiff in fact had ample notice of the discovery schedule.

Although Plaintiff's attorneys initially asserted that they did not represent Sullivan, in a November 4 letter they advised Defendants' counsel that Sullivan was not available for a November 6 deposition. (Letter of 4/4/98, Ex. 17 to Defendants' Appendix.) On November 5, Plaintiff's attorneys reported that they had agreed to undertake his representation "as [he] will not likely to be able to retain other counsel in time to respond to your latest specious facsimile transmission." (Letter of 11/5/98, Ex. L to Defendants' Motion to Dismiss, Ex. 25 to Defendants' Appendix.) Finally on November 9, Plaintiff's attorneys announced "[W]e now represent Rick Sullivan. Any contact with him must come through us." (Letter of 11/9/98, Ex. 20 to Defendants' Appendix.) In Plaintiff's attorneys' view, their new status as Sullivan's attorneys permitted them to refuse to provide information concerning his name and address. *Id.* ("[W]e are not required to answer interrogatory no. 15 to an extent greater than we already have.") In this court's view, to the contrary, Plaintiff's attorneys were required to provide this information, and their failure to do so needlessly protracted these proceedings. Defendants ultimately learned that Sullivan was a PS employee at the deposition of a PS senior vice president on December 1, 1998. In its response to this motion, Plaintiff's attorneys offer no explanation for their failure at any time to disclose Sullivan's status.

2. The Sullivan Memo

*7 Counsel's conduct with respect to the Sullivan memo was equally troublesome. As noted, Plaintiff contended that information Stern provided to Sullivan was central to its Lanham Act claims. After his initial meeting with Kenneth Stern, on March 26, 1997, Rick Sullivan prepared an e-mail memorandum describing that meeting. Among the details set forth in that memo were Sullivan's observations that

the only time he [Stern] stated PS Productions [sic] was when he said that he was recruited by PS to come to Chicago and run its programs.... On the same note, he never directly said that these programs were the work of Stern Hall (he also never said directly that they were the work of PS). Essentially, he used the examples above to present Stern Hall to me.
Nothing in print or on video specific said PS Productions [sic], either.
(Sullivan Memo, Ex. 3 to Defendants' Appendix.)

In their first set of interrogatories, Defendants specifically requested the identity of any statement from potential witnesses. When Plaintiff answered these interrogatories on September 1, 1998, Plaintiff identified no statements at all in response to this interrogatory, instead stating a blanket objection of attorney-client privilege and work product immunity. (Plaintiff's Objections and Answer to Defendants' First Set of Interrogatories, Ex. 10.) Defendants promptly wrote a letter pursuant to the local rule requiring parties to "meet and confer" concerning discovery disputes. Not until Defendants had filed a **motion** to **compel** did Plaintiff's attorneys respond to that letter with the puzzling assertion that it had no obligation to identify the Sullivan memo because "you never requested a **privilege log**." (Letter of 11/9/98, Ex. 20 to Defendants' Appendix.) Again, Plaintiff's declaration reflects a gross misunderstanding of the discovery rules. The party who withholds information or documents is required by those rules to produce a privilege log. Fed. R. Civ. P. 26(b)(5); *see Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.* 145 F.R.D. 84, 88 (N.D.Ill.1992). No "request" for such a log is required. Plaintiff's refusal to prepare a privilege log without a formal request again needlessly protracted this litigation.

Defendants in fact did request a privilege log (Letter of 11/16/98, Ex. Q to Defendants' Motion to Dismiss, Ex. 25 to Defendants' Appendix), and, in a second letter, again requested a response to its interrogatory seeking the identity of witness statements. (Letter of 11/16/98, Ex. N to Defendants' Motion to Dismiss, Ex. 25 to Defendants' Appendix.) This second letter asserted that Plaintiff's blanket objection had no merit, and noted that Plaintiff's attorney had asked Defendant for identical information, which Defendants had provided. (*Id.*) When Plaintiff had not responded by November 19, Defendants wrote yet again and filed

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 293033
(Cite as: 2001 WL 293033 (N.D.Ill.))

Page 7

a motion to dismiss the case as a discovery sanction. (Defendants' Motion to Dismiss, Ex. 25 to Defendants' Appendix.) Finally on November 24, the day Defendants' motion to dismiss was heard by this court, Plaintiff disclosed the existence of the Rick Sullivan memo, but stood by its refusal to produce it. (Letter of 11/24/98, Ex. E to Defendants' Supplemental Appendix.)

*8 This court considered the matter at a November 30, 1998 discovery conference. The court had little difficulty overruling the attorney-client privilege objection that Plaintiff had voiced in its initial response; there was no basis on which the memo could be understood as a communication with counsel. (Order of 11/3/98, Ex. 28 to Defendants' Appendix.) The court directed that Plaintiff produce the memo for counsel's review only at the deposition of Paul Stanley on December 1, 1998; to ensure that Mr. Stern's independent recollection of his communications with Sullivan were not improperly influenced, the court directed that the memo not be disclosed to him prior to his own deposition on December 2, 1998. (Id.) The court itself expected that the memo would be produced to Defendants after Mr. Stern's deposition (Transcript of 4/8/99, Ex. 43 to Defendants' Appendix, at 5:20-22), but Plaintiff interpreted this direction as a shield against use of the memo at the depositions of other witnesses, including that of Sullivan himself.

Indeed, on April 8, 1999, the court granted another of Defendants' motions to compel, this time ordering that the document be produced in its entirety, with the exception of any language reflecting litigation strategy. (Order of 4/8/99, Ex. 44 to Defendants' Appendix.) Plaintiff interpreted this direction as an invitation to redact portions of the Sullivan memo in which Sullivan noted that Stern had not mentioned PS in their meeting and had not claimed the work he was displaying to Sullivan as that of Stern Hall or of PS itself. Ultimately, on April 13, 1999, this court granted Defendants' request for an *in camera* review of the Sullivan memo and ordered that it be produced in its entirety, save two words in the "re:" line. (Order of 4/13/99, Ex. 48 to Defendants' Appendix.) Nothing else about this memo can be interpreted as reflecting attorney impressions or trial strategy. Plaintiff's refusal to produce directly relevant (albeit damaging) evidence in response to a legitimate discovery request unduly protracted these proceedings.

B. Discovery Delays and Objections

Finally, Defendants ask the court to consider Plaintiff's delays and failures to cooperate with discovery. On July 29, 1998, Defendants' attorneys sent a lengthy letter concerning outstanding discovery matters. (Letter of 7/29/98, Ex. 8 to Defendants' Supplemental Appendix.) While Plaintiff's lawyers wrote back on August 12, that letter referred to possible settlement efforts and made no formal response to Defendants' discovery concerns, instead listing Plaintiff's own concerns about Defendants' discovery responses. (Letter of 8/12/98, Ex. 8 to Plaintiff's Appendix.) Defendants filed their first motion to compel on August 21 (Motion to Compel, Ex. 8 to Defendants' Appendix), but withdrew that motion based on Plaintiff's assurances that the responses were forthcoming. (Letter of 8/25/98, Ex. 9 to Defendants' Appendix.) Further motions were filed on November 6 and November 24, 1998, and were granted by agreement when Plaintiff agreed at last to produce witnesses for their depositions. (Order of 11/24/98, Ex. 27 to Defendants' Appendix.) On April 8, 1999, the court granted a motion directing Plaintiff to produce the Sullivan memo, Mr. Stern's personnel file, Plaintiff's marketing brochures, and documents relating to certain videotapes. (Order of 4/8/99, Ex. 44 to Defendants' Appendix.) At the April 8, 1999 hearing, the court heard but overruled Plaintiff's vehement objection to production of certain marketing brochures. Plaintiff's counsel stated at that hearing that Plaintiff has "numerous marketing brochures" (Transcript of 4/8/99, Ex. 43 to Defendants' Appendix, at 13:2-3) and that production of such brochures would be extremely burdensome: "Do you know how many marketing brochures our client sends out, your honor?" (Id. at 14:15-16.) Finally, counsel requested that the production be for attorneys' eyes only, cautioning, "we don't want to give Mr. Stern a voluminous amount of marketing brochures...." (Id. at 28:6-7 .)

*9 Despite a lengthy discussion of these matters and an explicit written order, Plaintiff did not produce the requested materials. Defendants presented yet another motion to compel on May 5, 1999, this one accompanied by an affidavit from one of Defendants' attorneys describing his failed efforts to communicate with Plaintiff's counsel about the discovery matters. The parties dispute generally whether Plaintiff's attorneys responded appropriately to Defendants' letters and calls

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 293033
(Cite as: 2001 WL 293033 (N.D.Ill.))

throughout the course of this litigation. At least with respect to the events leading up to the May 5, 1999 motion, the court concludes that Plaintiff's attorneys' response was ineffective and inadequate. For example, Plaintiff's attorneys provide no explanation for their conduct on April 22, 1999, recounted in Defendants' attorney's letter of that date as follows:

This morning you told me that there were some documents available today and that I should call Jeff Kopiwoda to make arrangements.

Thus, I called Mr. Kopiwoda earlier this afternoon and was told he was on the phone. I stayed on hold for about ten minutes and was then told that Mr. Kopiwoda would be on the phone for a very long time. I then asked for you, Glenn Udell, and Bill Bass, in that order, and was told that, for various reasons, no one was available. I then asked for Peter Weiss and explained that I was calling to make arrangements to pick up the documents. He said he would call me back in a few minutes. However, I never heard back from him. Nor have I received any documents from your firm.

(Letter of 4/22/99, Ex. 51 to Defendants' Appendix.)

The court addressed the matter of communication between counsel specifically at a May 5, 1999 hearing, commenting on counsel's very recent disclosure that certain requested documents (marketing brochures and videotapes) did not in fact exist:

THE COURT: [T]he reason I am so baffled by that is that then if that's the case, then why not when you get an April 26th letter from Mr. Hale [Defense counsel] that says, "It appears that you have not produced your marketing brochures.... It appears that you did not produce any documents that refer or relate to the distribution of the videotapes." Why not at that point say, "I better give Mr. Hale a call and tell him there aren't any?"

MR. UDELL: Judge, all I can tell you is that I can't speak for [Co-counsel] Mr. Pomerantz.... I can't answer for why he did or didn't do what you are asking me to answer.

(Transcript of 5/5/99, Ex. 56 to Defendants' Appendix, at 16:8-24.) Equally baffling and disturbing to the court was the fact that Plaintiff's attorneys had engaged their opponent and this court in a lengthy objection to the alleged burden of producing marketing brochures--documents that

upon further investigation turned out to be non-existent. This court concludes, as it did in May 1999, that Plaintiff's conduct with respect to Defendants' discovery requests unduly protracted these proceedings. At that time, the court characterized Plaintiff's practice of asserting objection to production of documents that do not exist as "a puzzling waste of attorney time." (Transcript of 5/10/99, Ex. J to Defendants' Appendix, at 19:7-11.) Plaintiff's attorneys' refusal to respond promptly to discovery, failure to investigate concerning the availability of requested materials, and silence in response to Defendants' repeated contacts, unreasonably multiplied the proceedings in this case.

*CONCLUSION*

*10 The court takes no pleasure in sanctioning attorneys. Nor should the parties interpret this court's criticisms of the performance of Plaintiff's counsel as a pronouncement that the conduct of Defendants and their attorneys were in all respects blameless. The court's careful review of the history of this litigation, however, leads to the conclusion that to take no action here would be an abuse of discretion. Plaintiff's attorneys acted improperly in failing promptly to disclose Mr. Sullivan's identity and relationship to PS Promotions. They acted improperly in objecting to and withholding for months the e-mail memo prepared by Mr. Sullivan after his meeting with Mr. Stern. Finally, the pattern of Plaintiff's counsel in refusing to cooperate and communicate in discovery with their opponents in discovery generated needless delay and expense for opposing counsel. To require that Defendants bear the expense generated by Plaintiff's performance would be to reward incivility.

The court, therefore, grants Defendants' motion for an award pursuant to 28 U.S.C. § 1927 and invites Defendants to prepare and submit a motion for an award of the attorneys' fees they expended in (a) seeking Rick Sullivan's identity and address and procuring his attendance at a deposition; (b) obtaining production of the Rick Sullivan memo; and (c) pursuing responses and compliance with all of the discovery ordered by this court on April 8, 1999, including the expense of preparing and presenting their May 5, 1999 motion to compel. Before submitting such a motion, the court expects compliance with this court's Local Rule 54.3. The court would welcome efforts on the part of counsel

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

to settle their differences on this matter.

2001 WL 293033, 2001 WL 293033 (N.D.Ill.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# EXHIBIT  11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

v.

DAEWOO MOTOR AMERICA, INC.,
d/b/a DAEWOO OF SEMINOLE,

        Defendant.

_____/

CIVIL ACTION NO.

**COMPLAINT**
**JURY TRIAL DEMAND**
**INJUNCTIVE RELIEF SOUGHT**

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex, and to provide appropriate relief to Rebecca M. Brockman and any other similarly situated individuals who were adversely affected by such practices. As stated with greater particularity in paragraph 7, the Commission alleges that Ms. Brockman, a female, was subjected to verbal and physical conduct of a sexual nature by a management official of the Defendant Corporation and male coworkers. The conduct was sufficiently severe and pervasive to constitute an intimidating, hostile and offensive work environment. As a result of the hostile environment, the conditions of Ms. Brockman's employment were so intolerable that she was forced to resign her position.

1

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981A.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Florida, Orlando Division.

## PARTIES

3.     Plaintiff, the United States Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.     At all relevant times, Defendant, Daewoo Motor, Inc. (the "Employer"), has continuously been a California corporation doing business in the State of Florida and the City of Sanford, and has continuously had at least 15 employees.

5.     At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6.     More than thirty days prior to the institution of this lawsuit, Ms. Brockman filed a

2

charge with the Commission alleging violations of Title VII by Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

7.   From on or about December 1999, Defendant engaged in unlawful employment practices at its Sanford, Florida facility, in violation of Section 703(a)of Title VII, 42 U.S.C. § 2000e-2(a) which included the following:

a)   Ms. Brockman was regularly subjected to unwelcome physical and verbal conduct of a sexual nature by Defendant's Finance Manager Mitch Fazio and male coworkers, which was sufficiently severe and pervasive to constitute an intimidating, hostile and offensive work environment. The sexual conduct included vulgar language, abusive behavior, and sexual remarks of a personal nature.

b)   On or about April 7, 2000, Ms. Brockman was forced to resign her position as a Receptionist because the conditions of her employment were so intolerable (due to the persistent harassment by Mr. Fazio and co-workers due to her sex and Defendant's failure to take any action) that a reasonable person subjected to the same or similar conduct would have been compelled to resign.

c)   Other similarly situated female employees of the Defendants were subjected to sexual harassment by Mr. Fazio and other male co-workers in the form of unwelcome physical and verbal conduct of a sexual nature which was sufficiently severe and pervasive to constitute an intimidating, hostile and offensive work environment.

8.   The effect of the practices complained of in paragraph 7 above has been to deprive Rebecca M. Brockman and any other similarly situated individuals of equal employment

3

opportunities and otherwise adversely affect their status as employees because of their sex.

9.   The unlawful employment practices complained of in paragraph 7 above were intentional.

10.   The unlawful employment practices complained of in paragraph 7 above were done with malice or with reckless indifference to the federally protected rights of Rebecca M. Brockman and any other similarly situated individuals.

<u>PRAYER FOR RELIEF</u>

Wherefore, the Commission respectfully requests that this Court:

A.   Grant a permanent injunction enjoining Defendant Employer, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in sexual harassment and any other employment practice which discriminates on the basis of sex.

B.   Order Defendant Employer, to institute and carry out policies, practices, and programs which provide equal employment opportunities for females, and which eradicate the effects of its past unlawful employment practices.

C.   Order Defendant Employer, to make whole Rebecca M. Brockman and any other similarly situated individuals, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to, reinstatement and/or front pay, restoration of benefits and positive future employment references for Rebecca M. Brockman and any other similarly situated individuals.

D.   Order Defendant Employer, to make whole Rebecca M. Brockman and other similarly situated individuals, by providing compensation for past and future pecuniary losses

4

resulting from the unlawful employment practices described in paragraph 7 above, including but not limited to, out of pocket losses, medical expenses and job search expenses, in amounts to be determined at trial.

      E.    Order Defendant Employer, to make whole Rebecca M. Brockman and any other similarly situated individuals by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraph 7 above, including but not limited to, emotional pain, suffering, inconvenience, humiliation and loss of enjoyment of life, in amounts to determined at trial.

      F.    Order Defendant Employer, to pay Rebecca M. Brockman and any other similarly situated individuals punitive damages for its malicious and reckless conduct described in paragraph 7 above, in amounts to be determined at trial.

      G.    Grant such further relief as the Court deems necessary and proper in the public interest.

      H.    Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.

GWENDOLYN REAMS
Acting Deputy General Counsel

DELNER FRANKLIN-THOMAS
Regional Attorney

MICHAEL J. FARRELL
Supervisory Trial Attorney

5

JOHN C. WEAVER
Trial Attorney
Colorado Bar No. 030333

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
MIAMI DISTRICT OFFICE
One Biscayne Tower
2 South Biscayne Boulevard
Suite 2700
Miami, Florida 33131
Tel. (305) 536-7247
Fax (305) 536-4494

6

# EXHIBIT  12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

EQUAL EMPLOYMENT OPPORTUNITY            CASE NO. 99-9077-CIV-HURLEY
COMMISSION and CARRIE SABZALIAN,

      Plaintiffs,

vs.

ATLANTIS GOLF CLUB, INC.,

      Defendant.
_____/

FILED by ___ D.C.

APR - 2 2001

CLARENCE MADDOX
CLERK U.S DIST. CT.
S. D. OF FLA.

## ORDER ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENA (DE #44)

**THIS CAUSE** having come on to be heard upon the aforementioned Motion, and this Court having reviewed the Motion and the response, and noting that on the same day as filing the instant motion Defendant also filed a motion to strike Plaintiffs' claims for punitive damages, and further noting that Judge Hurley denied Defendant's motion to strike Plaintiffs' claims for punitive damages on March 15, 2001, and further noting that Defendant's financial condition is relevant, and being otherwise advised in the premises, it is hereby

    **ORDERED AND ADJUDGED** that Defendant's Motion for Protective Order and to Quash Subpoena is **DENIED**, it is further

    **ORDERED AND ADJUDGED** that Defendant shall produce, **within fourteen (14) days** of the date of this order, a corporate representative to testify to Defendant's financial condition at a Rule 30(b)(6) deposition.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this
2 day of April, 2001.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE


cc:  Kenneth L. Gillespie, Esq.
     Ellen S. Malasky, Esq.

2

# EXHIBIT  13

99-3377.o2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 99-3377 CIV UNGARO-BENAGES

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

     Plaintiff,

vs.

INTER-AMERICAN TRANSPORT
EQUIPMENT CO., LTD.,

     Defendant.

_____/

## ORDER GRANTING MOTION TO COMPEL DISCOVERY

**This matter is** before this Court on Plaintiff Equal Employment Opportunity Commission's Motion to Compel Discovery, filed August 11, 2000. The Court has considered the motion, the response, the reply, and all pertinent materials in the file.

     The motion regards the issue of what law to apply regarding discovery related to punitive damages in a case that arises under federal law. The law cited by defendant is not applicable to the facts of this case. The Court is persuaded to follow the majority of federal courts in Florida that have dealt with this issue. Defendant cites a Southern District case of Judge Hoeveler's, but correctly notes that this was a diversity case. The majority of cases arising under federal law have been uniform in applying regular standards regarding discovery on the issue of punitive damages. See e.g. Morris v. Crow, 825 F. Supp. 295 (M.D. Fla. 1993); In re Sahlen & Associates, Inc. Securities Litigation, 773 F. Supp. 342 (S.D. Fla. 1991); Brennan v. City of Mineola, Florida, 723 F. Supp.

1442 (M.D. Fla. 1989).

In addition, while defendant states that "[T]he current financial condition of a defendant at the time of trial is the pertinent touchstone in a punitive damages inquiry" (page 2 of the reply), no law is cited to support that statement. Even if correct, that statement is in regard to admissibility at trial, not discoverablility. The materials sought by plaintiff are not unreasonable.

This also applies to defendant's argument regarding insurance coverage. It is further noted that, while Federal Rule of Evidence 411 excludes evidence of insurance, it is a limited exclusion. It may be, under the facts alleged herein, that if insurance coverage is available for punitive damages, it may have to be considered.

Therefore, the Court being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED** that said motion be and the same is hereby **GRANTED.** Defendant shall have ten (10) days from the date of this order to produce the documents sought.

**DONE AND ORDERED** this _18_ day of September, 2000, at Miami, Florida.

STEPHEN T. BROWN
U.S. MAGISTRATE JUDGE

cc:    Honorable Ursula Ungaro-Benages
       Rachel H. Shonfield Esq.
       Robert K. Burlington Esq.
       Stanley Kiszkiel Esq.

2

# EXHIBIT  14

a year-old annual report are sufficient to disallow the requested discovery.

Apparently Plaintiff sought additional financial information in its Request for Production, but Defendant declined to provide it (*see* Composite Exhibit 2 to Doc. #36). Whether providing that information would have avoided the need for the deposition is unknown.  The Court would hope parties could engage in voluntary discovery that would avoid the necessity for depositions such as that at issue.

The Court understands the location of the deposition has been shifted, appropriately, to Jacksonville, rather than Miami, and is scheduled for May 6, 2002, rather than May 7, 2002.

Given those facts, the Motion to Quash (Doc. #28) is **DENIED.**  Defendant shall produce the witness and documents requested in the subpoena.

**DONE AND ORDERED** at Jacksonville, Florida this ___*31*___ day of May, 2002

_Thomas E. Morris_
**THOMAS E. MORRIS**
**United States Magistrate Judge**

Copies to:
All Counsel of Record

2

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATED EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

       Plaintiff,

and

MITZI B. SMITH, HOLLY DANIELS
and BARBARA NEEL,

       Intervenors

vs.                            Case No. 3:01-cv-216-J-21TEM

GEOLOGISTICS AMERICAS, INC.,

       Defendant.

---

## O R D E R

     The Court has before it Defendant's Emergency Motion to Quash Regarding the Deposition of Defendant's 30(B)(6) Representative (Doc. #28) and Plaintiff EEOC's Response (Doc. #36).

     Although the Court is sympathetic to the burden involved on the witness, it cannot find that the sole purpose of the deposition is to harass or annoy the witness or Defendant, nor can the Court ascertain any other reason under Fed. R. Civ. P., Rule 26(c) that would call for a protective order. Because the potential for punitive damages is present in the case, evidence of the Defendant's income and assets may be admissible and Plaintiff should be allowed discovery on those matters. *Cf. Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981), *Bessier v. Precise Tool & Engineering Co., Inc.*, 778 F. Supp. 1509, 1513-4 (W.D. Mo. 1991). The Court does not find that proof of an insurance policy and